[No. 34893-1-I.   Division One.   October 9, 1995.]

*In the Matter of the Marriage of* RICHARD JAMES, *Appellant, and* SUSAN JAMES BARGER, *Respondent.*

■■■■■■■■

*Lawrance A. Edwards*, for appellant.
*Mark T. Patterson*, for respondent.

■■■■■■■■

AGID, J. — The trial court found both Richard James and his former wife, Susan Barger, in contempt of court for failing to comply with provisions of their parenting plan. Richard failed to spend designated weekends and vacation with his daughter. Susan failed to make her available for telephone calls on certain dates and did not take her to a specified place to meet her father. Both have numerous excuses for violating the parenting plan. While we sympathize with the trial court's efforts to enforce the plan despite the parties' acrimonious charges and counter-charges, we hold that the statute governing contempt orders, RCW 26.09.160, requires the court to first make a specific finding that the parent has acted in bad faith or that prior imposition of a lesser sanction did not compel the parent to comply. Because the trial court did not do so here, we reverse both orders.

## FACTS

Richard and Susan James (now Susan Barger) divorced in 1989. Their parenting plan gives Susan primary residential care of their daughter. Richard has residential care three weekends per month and on specified holidays. The parties have a long history of court disputes, including motions for contempt and motions to modify the parenting plan.

Richard filed a motion to hold Susan in contempt for her alleged failure to bring their child to a store parking lot to commence his weekend custody. He also claimed Susan failed on four occasions to facilitate his telephone conversations with their daughter, as ordered in the parenting plan. In response, Susan filed a motion to hold Richard in contempt for not taking the child on specified weekends and during her spring break in 1994. Susan claimed that Richard had told their daughter that he would not have her with him on weekends until she could also live with him during the week. Susan alleged that Richard wanted to modify the parenting plan so that he would be the primary residential parent, and that he filed the contempt motion in order to coerce her into agreeing to this modification.

Following a hearing on affidavits, the trial court granted both motions. The ruling cited RCW 26.09.160 and .184, the modified parenting plan, and the court's inherent power. The court sentenced both parties to jail time, but allowed them to purge the contempt with make-up visits and telephone calls. Each party was ordered to pay the other's fees and costs. On appeal, both parents argue that the trial court did not follow the proper procedures in finding them in contempt. Richard also contends that a court does not have the power to find a noncustodial parent in contempt for failure to exercise visitation, because visitation is a right and a privilege, not an obligation to be enforced by the court's contempt powers.[1] Finally, both assert that the evidence does not support the trial court's contempt findings.

## PROCEDURE FOR FINDING A PARTY IN CONTEMPT

█ A court in a dissolution proceeding has the authority to enforce its decree in a contempt proceeding. Punishment for contempt of court is within the sound discretion

---

[1]As noted, *infra*, at page 443, the Legislature abandoned the concepts of "non-custodial" parents and "visitation" when it passed the Parenting Act of 1987. Richard's statement of this issue, therefore, is imprecise.

of the trial court, and this court will not reverse a contempt order absent an abuse of that discretion. *In re Mathews*, 70 Wn. App. 116, 126, 853 P.2d 462, *review denied*, 122 Wn.2d 1021 (1993). A trial court abuses its discretion by exercising it on untenable grounds or for untenable reasons. *Mathews*, 70 Wn. App. at 127.

■■ RCW 26.09.160(2)(b) provides that a court shall find a party in contempt when "the court finds after hearing that the parent, in bad faith, has not complied with the order establishing residential provisions for the child." Richard argues that this means a party cannot be found in contempt without a written finding that the party intentionally violated a court order or did so in bad faith. We agree.

Our Supreme Court has held that a trial court must make findings of fact which set forth the basis for its judgment of contempt. *State ex rel. Dunn v. Plese*, 134 Wash. 443, 447, 235 P. 961 (1925). The court did not specifically hold that those findings include bad faith or intentional misconduct, but its reasoning supports that conclusion:

> If, as we have held, findings are necessary in the ordinary case, they ought to be more useful and necessary in a case of this character where the defendant may not only be fined but imprisoned. This court ought to know upon what specific acts the trial court held appellant to be guilty of contempt.

*Plese*, 134 Wash. at 449.[2] In addition, RCW 26.09.160(2)(b) predicates contempt orders upon a finding that the parent has acted in bad faith, and the sanctions for contempt under the statute include jail time and monetary fines. Thus, both the judicial concern for the rights of contemnors and the statute itself support a requirement that the trial court make a specific finding of bad faith or intentional misconduct as a predicate for its contempt judgment. *See, e.g., Tetro v. Tetro*, 86 Wn.2d 252, 255, 544 P.2d

[2]In Florida, a contempt order is deficient if it does not contain an express finding of willful or deliberate refusal to obey a court order. *Washburn v. Washburn*, 647 So. 2d 1044 (Fla. Dist. Ct. App. 1994). Florida's statute is similar to the Washington Parenting Act and thus is useful in interpreting our statute.

17 (1975) (contempt proceedings are quasi-criminal in nature, and because of the threat of imprisonment, defendants are entitled to counsel, among other protections).

We therefore hold that, in order to enter a contempt order pursuant to RCW 26.09.160, the trial court must first make a specific finding that the parent has acted in bad faith or committed intentional misconduct, such as disobeying a prior court order or using custodial time in a manner calculated to manipulate the other party into changing a parenting plan. A trial court may also find a party in contempt when it has first tried to resolve parenting plan violations with lesser sanctions which did not achieve the requisite compliance with the plan. Those sanctions could include requiring counseling, imposing terms, requiring the defaulting parent to pay for child care expenses incurred by the parent who was not supposed to have the child during the period in question, granting make-up time for visits, or other sanctions the court, in the exercise of its discretion, deems appropriate.[3] The written contempt orders in this case do not contain specific findings of bad faith, intentional misconduct or prior unavailing sanctions. There is also no oral order from which we could ascertain whether the trial court made a finding that would support these orders.

Susan argues that a contempt hearing should be governed by the procedures and burdens of proof analogous to those used for summary judgment motions. Because the parties' affidavits contained disputes of material fact, she contends it was improper for the court to

---

[3]Richard correctly points out that the court cannot base a contempt order for failing to comply with a parenting plan on its "inherent power." A court may not utilize its inherent power of contempt unless the statutory remedies are inadequate, and it must make a specific finding that the statutory remedies are inadequate. *In re King*, 44 Wn. App. 189, 194, 721 P.2d 557 (1986). RCW 26.09.160 and .184 provide adequate authority and remedies.

grant a judgment without oral testimony.[4] She further argues that the burden is on Richard to prove by clear, cogent and convincing evidence that her failure to comply with the plan was in bad faith. We do not agree with these contentions.

A court may conduct a hearing on contempt by affidavit, oral testimony or both. 2 Washington State Bar Ass'n, *Family Law Deskbook* § 63.5(1)(d), at 63-16 (1991). The court conducts a hearing on affidavits in domestic relations cases in the same manner as other trials by affidavit. *See, e.g.*, King County Local Rule 94.04(g)(7)(C)(5). The trial court may weigh the credibility of each party based on sources other than oral testimony. These might include the plausibility of a party's position, consistency with information in the court file and testimony at trial, and affidavits of persons other than the parties. If the trial court feels it cannot adequately decide a material contested issue without oral testimony, it may on its own motion schedule an evidentiary hearing which it may limit to resolving an issue upon which the decision depends.

Susan cites no authority for the proposition that the burden on the moving party is or should be to establish contempt by clear, cogent and convincing evidence. Nor can we discern a reason for imposing an extraordinary burden of proof in a civil contempt case. *Cf. State v. John*, 69 Wn. App. 615, 618, 849 P.2d 1268 (1993). We hold that the moving party has the burden of proving contempt by a preponderance of the evidence. This showing must include evidence from which the trial court can find that the offending party has acted in bad faith or engaged in intentional misconduct or that prior sanctions have not secured compliance with the plan. Once the moving party has established a prima facie case, the responding parent must rebut that showing with evidence of legitimate reasons for failing to comply with the parenting plan.

---

[4]Nothing in the record indicates, and Susan does not claim, that she requested an oral hearing. Thus, she has waived her opportunity for an oral hearing. Snohomish County Local Special Proceedings Rule 94.04(e)(b).

RCW 26.09.160(4). The trial court will then weigh the evidence in the traditional manner and determine whether the moving party has met his or her burden. If so, the statute directs that a contempt order issue.[5]

## CONTEMPT FOR VIOLATING RESIDENTIAL PROVISIONS

Richard argues that a party can never be held in contempt for failure to spend the residential time with the child specified by the parenting plan. We disagree because the Washington Parenting Act, RCW 26.09, expressly gives the trial court the power to do so.

RCW 26.09.160 provides in relevant part:

> (1) The performance of parental functions and the duty to provide child support are distinct responsibilities in the care of a child. . . . An attempt by a parent, in either the negotiation or the performance of a parenting plan, to condition one aspect of the parenting plan upon another, . . . [or] to refuse to perform the duties provided in the parenting plan, . . . shall be deemed bad faith and shall be punished by the court by holding the party in contempt of court . . . .

RCW 26.09.184 provides in relevant part:

> (5) The [parenting] plan shall include a residential schedule which designates in which parent's home each minor child shall reside on given days of the year . . . .

> (6) . . . Failure to comply with a provision in a parenting plan or a child support order may result in a finding of contempt of court, under RCW 26.09.160.

---

[5]Neither party raises this issue, but the order is also deficient in that it did not comply with RCW 26.09.165, which reads:

All court orders containing parenting plan provisions or orders of contempt, entered pursuant to RCW 26.09.160, shall include the following language:

WARNING: VIOLATION OF THE RESIDENTIAL PROVISIONS OF THIS ORDER WITH ACTUAL KNOWLEDGE OF ITS TERMS IS PUNISHABLE BY CONTEMPT OF COURT, AND MAY BE A CRIMINAL OFFENSE UNDER RCW 9A.40.060(2) OR 9A.40.070(2). VIOLATION OF THIS ORDER MAY SUBJECT A VIOLATOR TO ARREST.

■ Our Parenting Act is a legislative attempt to reduce the conflict between parents during and after a dissolution by focusing on continued parenting responsibilities, rather than on winning custody and visitation battles. The Act replaced the terms "custody" and "visitation" with concepts such as "parenting plans" and "parental functions." *In re Kovacs*, 121 Wn.2d 795, 800-01, 854 P.2d 629 (1993). It thus established a type of joint custody in which each parent is responsible for performing parental duties during his or her residential time with the child.

> The inference is that the (old style) noncustodial parent will have the right and also the duty to provide the residential care during particular times of the year and will be subject to contempt for failure to comply with this duty in the same manner as if he or she failed to pay child support or to perform any other duty under the court order.

2 Washington State Bar Ass'n, *Family Law Deskbook* § 46.5(6)(a), at 46-22 (1991). The Act makes contempt orders mandatory ("shall be punished by . . . contempt") in some instances. By its overall purpose and wording, the Act also makes it clear that parenting is not only a right and a privilege, as Richard argues, but also a duty and a responsibility obligating both parents. A parent's failure to assume responsibility during the designated residential time is harmful to the child and to the parent/child relationship. In addition, it has a detrimental effect on a parent who may have conflicting obligations and relies on the other parent to care for the child at the specified times.

Richard argues that, if a parent chooses not to spend time with his or her children, the court cannot force him or her to do so. This ignores the fact that parental privileges, divided between the parents when their marriage is dissolved, carry concomitant duties and responsibilities. Divorce does not change each parent's fundamental obligation of care and support, including residential care during the times specified in the parenting plan. Once the court has ruled, either in the parenting plan or in a subsequent order, that spending time with a parent is in the best

interests of the child, that parent is expected to care for the child during the time the plan gives him or her custody. To rule otherwise would be to ignore the important role that both parents play in caring for the child as well as both parents' right to rely on the provisions of the parenting plan.[6]

Parents may, of course, agree to alter the child's residential schedule. In addition, compliance may be difficult or impractical on occasion. For example, a recalcitrant teenager may refuse to spend time with one parent. If the parent with whom the child is living chooses not to force the issue and notifies the other parent of that decision, punishment by contempt appears to be an inappropriate remedy. Similarly, life's emergencies and unexpected events may sometimes prevent a parent from complying with the residential schedule. In instances like these, flexibility is important and the noncomplying parent is not acting in bad faith. Contempt remedies can be very serious. The court's contempt powers should be reserved for situations in which a parent who has been clearly told that he or she must comply with the residential schedule violates it in bad faith.

Because we reverse on other grounds, we do not reach the issue of whether substantial evidence supports the trial court's contempt orders.

BAKER, C.J., and ELLINGTON, J., concur.

---

[6]Richard argues that contempt is not the proper remedy for failure to follow the parenting plan because the statute provides only for make-up time. While make-up time is the sanction most commonly used to punish a parent who has denied the other parent rightful visitation, it's not the only sanction authorized. The statute clearly provides for contempt citations, for attorney fees and costs and a civil penalty of not less than $100, and for imprisonment of up to 180 days to enforce compliance. RCW 26.09.160; see also RCW 26.09.184(6).