IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In re the Marriage of: | ) | No. 31680-7-III |
| | ) | |
| KIMBERLY LAUBACH, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | UNPUBLISHED OPINION |
| and | ) | |
| | ) | |
| ARTHUR LAUBACH, III, | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, J. — This case is one of many illustrating harm to a child when his divorced parents squabble. Neither parent will change his or her behavior because the other parent is totally to blame for that harm. Courts are rarely capable of solving the problem of bickering parents.

Arthur Laubach appeals the trial court's denial of his motion to hold his former wife, Kimberly Laubach, in contempt for allegedly violating a parenting plan directing that he be notified of health care for their son. We affirm the trial court since the trial court did not abuse its discretion when finding that Kimberly Laubach did not act in bad faith when failing to comply with the plan.

FACTS

Arthur and Kimberly Laubach divorced and agreed to a parenting plan for their

two children in June 2010. Arthur lives in Colorado; Kimberly and their two children live in Washington State. As of 2010, their daughter, G.L., was five years old and their son, B.L., was 11.

After the marriage dissolution, Arthur and Kimberly mediated a new parenting plan, which the court approved on April 14, 2011. In relevant portion, that plan provides:

> Affection: Each parent shall exert every effort to maintain free access, or unhampered contact between the children and the other parent, so as to foster affection between the children and the other parent. Neither parent shall do anything that will estrange the children from the other parent, nor shall a parent do anything that would tend to injure a child's opinion of the other parent, or to impair in any way the natural development of the children's love and respect for both parents.
>
> . . . .
> 4.1 Day-to-Day Decisions
> Each parent shall make decisions regarding the day-to-day care and control of each child while the child is residing with that parent. Regardless of the allocation of decision making in this parenting plan, either parent may make emergency decisions affecting the health or safety of the children.
> 4.2 Major Decisions
> Major decisions regarding each child shall be made as follows:
> Education . . . . [X] joint
> Non-emergency health care . . . . [X] joint
> Religious upbringing [X] petitioner

Clerk's Papers (CP) at 43, 45.

At some point, B.L. began to cut himself as a coping mechanism. B.L. saw a therapist, who assisted him in improving his relationship with his father and in managing peer relationships.

2

On March 28, 2012, Kimberly took B.L. to a doctor for a wellness visit. The doctor diagnosed B.L. with depression and prescribed the antidepressant Prozac. Kimberly did not inform Arthur of the visit or prescription for two reasons. First, B.L. showed concern about his father knowing of his mental health therapy and his taking antidepressants. Kimberly wished to respect her son's privacy. Second, Kimberly did not believe that their parenting plan required her to notify Arthur.

B.L. stayed with Arthur for a month during the summer in 2012. B.L. arrived at his father's home with his medications, including Prozac, but no instructions from his mother to his father concerning the medications. During that time, Arthur learned of the March 28, 2012 doctor visit and B.L.'s taking of antidepressants. During the visit, Kimberly and B.L. engaged in texts, some of which were negative toward Arthur. On July 21, 2012, Kimberly wrote, "I hate you being there," and "two can play this butthole game." CP at 3, 5.

## PROCEDURE

On November 29, 2012, Arthur moved the court to find Kimberly in contempt, alleging (1) Kimberly violated section 4.2 of their parenting plan for non-emergency health care when she failed to inform him of the March 28 doctor visit and prescription for Prozac and (2) Kimberly violated the section titled "affection" when texting B.L.

3

No. 31680-7-III
*In re Marriage of Laubach*

The trial court heard argument on December 7. The clerk's notes for that hearing read:

> [Kimberly] shall have sole decision making regarding education and medical issues and shall advise [Arthur] 14 days prior to the effective date of that decision. [Arthur] shall submit his thoughts in writing within seven days to [Kimberly] and she shall give good faith consideration to his concerns and communicate to him whether she accepts or denies those concerns.
>
> . . . .
>
> Court was concerned regarding the parties ability to communicate effectively. Court found the parties have demonstrated an inability to communicate, the geographic distance made it more difficult, and that there had been domestic violence between them in the past. Court [o]rdered [Arthur] have full access to the medical and education records of the children. Court found [B.L.] did have issues with visitation and the parties need to positively encourage him to see visitation as positive[.]

CP at 15.

In its written order, dated December 28, the court found:

> Kimberly Laubach . . . intentionally failed to comply with a lawful order of the court dated on April 14, 2011.
>
> . . . .
>
> > [Kimberly] violated the terms of the parenting plan by referencing [Arthur] as a butthole to their son in a text conversation she had with their son. This conversation took place on or about July 21, 2012.

CP at 16-17. The court allowed for Kimberly to purge the contempt by avoiding reference to Arthur in any derogatory manner to the children for the next six months.

On January 7, 2013, Arthur moved for reconsideration. In that motion, Arthur noted that the trial court failed to address the contempt charge regarding non-emergency

4

medical care. Arthur also asked the court to reconsider its decision giving Kimberly sole decision making authority for education and medical issues.

Kimberly filed a responsive declaration to Arthur's motion for reconsideration on January 18. There, Kimberly declared:

> [B.L.] is currently refusing to talk to [his mental health counselor] because he does not want his dad to read the records of his treatment. [B.L.] needs mental health counseling and [Arthur]'s insistence on obtaining his records has caused [B.L.] to stop engaging in treatment. I can't make [B.L.] talk to [his counselor].

CP at 27. In the declaration, Kimberly clarified her understanding of their parenting plan. She declared that, during mediation, Arthur led her to believe he wanted notification of elective surgeries and thus they checked the joint decision making box.

The trial court denied the motion for reconsideration on March 5. In its letter ruling, the court wrote:

> Based on the court's review of this information, the court denies [Arthur]'s motion for reconsideration. As the court previously ruled, [Arthur] has failed to prove that [Kimberly] acted in bad faith by failing to notify him of the March 28, 2012 well-child appointment. Further, the court finds [Kimberly]'s declaration persuasive regarding her understanding of what types of information [Arthur] wished to receive. Thus, although [Kimberly] failed to provide information or consult with [Arthur] as required by the parenting plan then in effect, her actions were not taken in bad faith.

CP at 31.

5

No. 31680-7-III
*In re Marriage of Laubach*

LAW AND ANALYSIS

Arthur contends the trial court erred when it denied his motion to hold Kimberly in contempt, under RCW 26.09.160, for withholding information of B.L.'s wellness visit and prescription for antidepressants. He does not appeal the remedy granted for Kimberly's contempt citation for demeaning him to B.L.

This court reviews a trial court's decision in a contempt proceeding for abuse of discretion. *In re Marriage of James*, 79 Wn. App. 436, 440, 903 P.2d 470 (1995). "A trial court abuses its discretion by exercising it on untenable grounds or for untenable reasons." *James*, 79 Wn. App. at 440.

> A court's decision is manifestly unreasonable if it is outside the range of acceptable choices, given the facts and the applicable legal standard; it is based on untenable grounds if the factual findings are unsupported by the record; it is based on untenable reasons if it is based on an incorrect standard or the facts do not meet the requirements of the correct standard.

*In re Marriage of Littlefield*, 133 Wn.2d 39, 47, 940 P.2d 1362 (1997). Even when the record is entirely documentary, the superior court's findings should be given deference and evaluated to determine if there is substantial evidence to support them. *In re Marriage of Rideout*, 150 Wn.2d 337, 359-60, 349, 77 P.3d 1174 (2003). In turn, this court reviews whether those findings support the trial court's conclusions of law. *Rideout*, 150 Wn.2d at 350.

In relevant portion, RCW 26.09.160 reads:

6

(1) The performance of parental functions and the duty to provide child support are distinct responsibilities in the care of a child. If a party fails to comply with a provision of a decree or temporary order of injunction, the obligation of the other party to make payments for support or maintenance or to permit contact with children is not suspended. An attempt by a parent, in either the negotiation or the performance of a parenting plan, to condition one aspect of the parenting plan upon another, to condition payment of child support upon an aspect of the parenting plan, to refuse to pay ordered child support, to refuse to perform the duties provided in the parenting plan, or to hinder the performance by the other parent of duties provided in the parenting plan, shall be deemed bad faith and shall be punished by the court by holding the party in contempt of court and by awarding to the aggrieved party reasonable attorneys' fees and costs incidental in bringing a motion for contempt of court.

(2)(a) A motion may be filed to initiate a contempt action to coerce a parent to comply with an order establishing residential provisions for a child. If the court finds there is reasonable cause to believe the parent has not complied with the order, the court may issue an order to show cause why the relief requested should not be granted.

(b) If, based on all the facts and circumstances, the court finds after hearing that the parent, in bad faith, has not complied with the order establishing residential provisions for the child, the court shall find the parent in contempt of court. Upon a finding of contempt, the court shall order:

(i) The noncomplying parent to provide the moving party additional time with the child. The additional time shall be equal to the time missed with the child, due to the parent's noncompliance;

(ii) The parent to pay, to the moving party, all court costs and reasonable attorneys' fees incurred as a result of the noncompliance, and any reasonable expenses incurred in locating or returning a child; and

(iii) The parent to pay, to the moving party, a civil penalty, not less than the sum of one hundred dollars.

The court may also order the parent to be imprisoned in the county jail, if the parent is presently able to comply with the provisions of the court-ordered parenting plan and is presently unwilling to comply. The parent may be imprisoned until he or she agrees to comply with the order, but in no event for more than one hundred eighty days.

. . . .

7

(4) For purposes of subsections (1), (2), and (3) of this section, the parent shall be deemed to have the present ability to comply with the order establishing residential provisions unless he or she establishes otherwise by a preponderance of the evidence. The parent shall establish a reasonable excuse for failure to comply with the residential provision of a court-ordered parenting plan by a preponderance of the evidence.

(Emphasis added.)

To find a parent in contempt of court under RCW 26.09.160, the trial court must first make a specific finding that the parent acted in bad faith or committed intentional misconduct, such as disobeying a prior court order or using custodial time in a manner calculated to manipulate the other party into changing a parenting plan. *James*, 79 Wn. App. at 441. A parent who refuses to comply with duties imposed by a parenting plan is considered to have acted in bad faith. *Rideout*, 150 Wn.2d at 349; RCW 26.09.160(1). Courts presume that parents have the present ability to comply with parenting plans. RCW 26.09.160(4). The burden is on a noncomplying parent to establish by a preponderance of the evidence that he or she lacked the ability to comply with the residential provisions of a court-ordered parenting plan or had a reasonable excuse for noncompliance. *Rideout*, 150 Wn.2d at 352-53; RCW 26.09.160(4).

Arthur argues that Kimberly's refusal to perform the duties provided in the parenting plan, by providing him notice of medical care, is *per se* bad faith under RCW 26.09.160(1). He accurately states the law, but misstates the facts. RCW 26.09.160 requires that a parent's refusal to comply with a parenting plan be deemed bad faith. In

this case, however, Kimberly did not refuse to comply with their parenting plan. She misunderstood its scope.

Arthur next argues that Kimberly acted in bad faith in a manner analogous to *Rideout*. In *Rideout*, Sara Rideout repeatedly failed to deliver her and Christopher Rideout's daughter for scheduled residential time. When Christopher filed contempt charges, Sara responded that Christopher's dispute was with his 13-year-old daughter. The daughter did not wish to visit her father. Sara did not dispute she failed to deliver the daughter at the designated time and place, but argued that her failure to comply was not in bad faith. The trial court rejected Sara's deflection of responsibility. The Supreme Court affirmed a contempt citation, writing:

> that where a child resists court-ordered residential time and where the evidence establishes that a parent either contributes to the child's attitude or fails to make reasonable efforts to require the child to comply with the parenting plan and a court-ordered residential time, such parent may be deemed to have acted in "bad faith" for purposes of RCW 26.09.160(1).

*Rideout*, 150 Wn.2d at 356-57.

Arthur remonstrates that, like Sara Rideout, Kimberly misconstrues any conflict as between him and their son, and has thus contributes to their son's recalcitrance to communicate with his father. Arthur emphasizes Kimberly's acquiesce to B.L.'s desire to keep medical information from him and Kimberly's derogatory texts to B.L.

The trial court expressly found that Kimberly misunderstood the scope of the

parenting plan. To support this finding, the court pointed to her statement that, "[d]uring mediation [Arthur] lead me to believe he wanted notification of elective surgeries and that was why we were checking the joint decision making box." CP at 25-26. Given the limited evidence in this case and this court's deference to the trial court, the evidence is sufficient to support the trial court's finding. The finding of fact, in turn, supports the trial court's conclusion that Kimberly violated the parenting plan, but not in bad faith.

## ATTORNEY FEES AND COSTS

Arthur requests attorney fees and costs on appeal under RCW 26.09.160(2)(b)(ii). The statute reads, in relevant part:

> (b) If, based on all the facts and circumstances, the court finds after hearing that the parent, in bad faith, has not complied with the order establishing residential provisions for the child, the court shall find the parent in contempt of court. Upon a finding of contempt, the court shall order:
>
> . . . .
> (ii) The parent to pay, to the moving party, all court costs and reasonable attorneys' fees incurred as a result of the noncompliance, and any reasonable expenses incurred in locating or returning a child.

Since we rule the trial court did not abuse its discretion when denying the contempt charge, attorney fees are not available to Arthur.

## CONCLUSION

We affirm the trial court's refusal to hold Kimberly Laubach in contempt for withholding medical care information from Arthur Laubach.

No. 31680-7-III
*In re Marriage of Laubach*

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____         _____
Korsmo, J.                                Siddoway, C.J.