FILED
COURT OF APPEALS
DIVISION II

2015 MAR 24 AM 8: 34

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Marriage of | No. 45921-3-II |
| APRIL McMILLIN, | |
|            Appellant, | |
| v. | UNPUBLISHED OPINION |
| AUSTIN McMILLIN, | |
|            Respondent. | |

MAXA, J. — April Adams (formerly McMillin) appeals the trial court's finding of contempt for her failure to comply with a court order relating to her residential time with her daughter, LM. The trial court found Adams in contempt after she failed to transfer LM at the end of her residential time. Adams argues that the trial court erred by failing to include in its contempt order a necessary finding that she acted in bad faith. She also argues that it was impossible for her to comply with the terms of the visitation order because nobody appeared to pick up LM at the scheduled time. We hold that (1) the trial court properly supported its contempt order with the necessary finding of bad faith, and (2) Adams did not show that it was impossible for her to comply with the terms of the court order regarding residential time. Accordingly, we affirm the contempt order.

## FACTS

Adams and her former husband, Austin McMillin, were involved in a protracted dispute over modification of the parenting plan for their children, LM and RM. On December 6, 2013,

the trial court issued an order temporarily modifying LM's residential schedule to allow Adams residential time on Saturdays from 10:00 AM to 5:00 PM.

The following day was a Saturday. McMillin was out of town, but he arranged for a neighbor and family friend, Beth Barker, to facilitate LM's transfer and then watch her until he returned on Sunday. Barker dropped LM off with Adams on Saturday morning without incident. But when Adams arrived at the transfer location with LM at 5:00 PM, Barker was not present. Adams waited for a while, then returned home with LM. Due to miscommunication between McMillin and McMillin's attorney, McMillin had told Barker that the transfer would occur at 7:00 PM. Barker arrived at that time to find neither Adams nor LM at the transfer location.

Barker notified McMillin that Adams was not at the transfer location, and both McMillin and Barker subsequently contacted Adams to try to accomplish LM's transfer. Adams was unwilling to transfer LM Saturday night, so Barker offered to facilitate the transfer on Sunday. But Adams did not contact Barker again. McMillin and Adams exchanged text messages in which McMillin demanded Adams transfer LM to Barker and Adams refused. Adams ultimately kept LM on Sunday and drove her to school Monday morning.

McMillin moved the trial court to hold Adams in contempt for failing to return LM. The trial court temporarily modified LM's residential schedule again, suspending visitation with Adams until a later review hearing. At the review hearing, the trial court found Adams in contempt for failing to transfer LM to Barker on Sunday despite having the opportunity to do so. The trial court's written contempt order included the following findings and conclusions:

> This order was violated . . . by not returning [LM] Sunday to Father (Dec. 8, 2013).
>
> April Adams had the ability to comply with the order as follows: she was aware Beth Barker was available to transfer [LM] on Sunday Dec. 8, 2013.

2

45921-3-II

> April [Adams] has not complied with the residential (visitation) provisions of the parenting plan and had the ability to comply with the parenting plan, and is currently unwilling to comply. The noncompliance with the residential provisions was in bad faith.

Clerk's Papers (CP) at 69, 71.

The trial court consequently held Adams in contempt and imposed sanctions under RCW 26.09.160. The trial court also modified LM's residential schedule again to give Adams visitation from 10:00 AM to 5:00 PM every other Saturday after February 1. The contempt order included a clause explaining that Adams could purge the contempt and reinstated this modified residential schedule.

Adams appeals the contempt order.

## ANALYSIS

### A. CONTEMPT ORDER

Adams challenges the trial court's contempt order on two grounds: (1) the trial court did not find or conclude that she acted in bad faith, and (2) under the circumstances it was impossible for her to comply with the terms of the order. We reject both arguments.

#### 1. Legal Principles

RCW 26.09.160 provides that failing to comply with a parenting plan is grounds for contempt. To support a contempt order for noncompliance with a parenting plan, a trial court must conclude that the contemnor acted in bad faith or committed intentional misconduct. RCW 26.09.160(2)(b); *In re Marriage of James*, 79 Wn. App. 436, 441, 903 P.2d 470 (1995). We will uphold any such conclusion if it is adequately supported by factual findings, and those findings are supported by substantial evidence. *In re Marriage of Rideout*, 150 Wn.2d 337, 351-52, 77 P.3d 1174 (2003). A finding is

3

supported by substantial evidence when the evidence before the court would be sufficient to persuade a fair-minded, rational person that the fact found is true. *In re Marriage of Chandola*, 180 Wn.2d 632, 642, 327 P.3d 644 (2014).

Under RCW 26.09.160, a trial court has discretion to punish parties for contempt, and we review the trial court's contempt order for an abuse of that discretion. *James*, 79 Wn. App. at 439-40. A court abuses its discretion when it makes a decision that is manifestly unreasonable or based on untenable grounds. *Chandola*, 180 Wn.2d at 642.

2.   Conclusion of Bad Faith

Adams argues that the trial court did not specifically find or conclude that she acted in bad faith, and therefore did not satisfy the statutory requirements for holding her in contempt. We disagree.

Adams's argument misstates the record. The trial court did find that Adams had engaged in misconduct and expressly concluded that her misconduct was in bad faith. In the written order, the trial court stated,

> [Adams] has not complied with the residential (visitation) provisions of the parenting plan and had the ability to comply with the parenting plan, and is currently unwilling to comply. *The noncompliance with the residential provisions was in bad faith.*

CP 71 (emphasis added). We therefore reject Adams's argument that the trial court did not enter the necessary conclusion of bad faith.

Adams argues in her reply brief that even if the trial court concluded that she had acted in bad faith, it did not specifically identify the conduct constituting bad faith or sufficiently support its conclusion with other findings. However, the trial court specifically found that Adams violated the parenting plan "by not returning [LM] to [f]ather (Dec. 8, 2013)," and that Adams "was aware Beth

4

Barker was available to transfer [LM] on Sunday Dec. 8, 2013." CP at 69. The trial court clearly based its conclusion that Adams acted in bad faith on these findings showing that Adams had not complied with its earlier order and had been unwilling to comply despite being able to do so. Because RCW 26.09.160(1) requires a trial court to deem such noncompliance bad faith, these findings provide sufficient support for the trial court's conclusion that Adams acted in bad faith.

Further, the trial court's findings clearly were supported by substantial evidence. By affidavit, both McMillin and Barker stated that Adams did not transfer LM at any point on December 7 or 8, despite multiple contacts from each of them. The affidavits also showed that Adams was aware that Barker was available and willing to facilitate the transfer. Text message records corroborated the affidavits and indicated that Adams acted evasively and without regard for the trial court's order. The trial court found McMillin's and Barker's affidavits credible, noting that Barker's affidavit was particularly persuasive because she was not a directly interested party. The evidence before the trial court was sufficient to persuade a fair-minded, rational person that Adams did not transfer LM on December 7 or 8, and that Adams was aware that Barker was available to facilitate the transfer.

Adams also argues that the trial court's findings did not establish that she violated the parenting plan at all if the terms of its residential time order are strictly construed. According to this argument, the order required Adams to transfer LM to McMillin directly but not to transfer LM to any third-party agent designated by McMillin.

The order stated that the "current residential schedule shall remain with one modification. Mother shall have residential time with [LM] from 10 am - 5 pm every Saturday. Transportation provided by delivering parent & pickup shall be University Place City Hall." CP at 2. Because McMillin was LM's residential parent, the order clearly allowed Adams visitation only from 10:00

5

AM to 5:00 PM on Saturdays. The order required the "delivering parent" to provide for LM's transportation to University Place City Hall, but it did not require each parent to be personally present for the transfer. In fact, the order further specified that "[t]he parents shall not have contact with one another at these exchanges." CP at 2. Because the order allowed room for third-party assistance with the transfers, we reject Adams's argument.

3. Impossibility Defense

Adams argues that McMillin made it impossible for her to comply with the terms of the visitation order, and that this should have provided a complete defense to the contempt charge. We disagree.

Impossibility provides a complete defense to contempt based on violation of a court order. *Britannia Holdings Ltd. v. Greer*, 127 Wn. App. 926, 933, 113 P.3d 1041 (2005). To establish the defense, the contempt respondent has the burden of proving inability to comply with the order. *Moreman v. Butcher*, 126 Wn.2d 36, 40, 891 P.2d 725 (1995).

Adams implies that she met this burden by showing that she attempted to transfer LM at 5:00 PM and thereafter was unable to transfer LM directly to McMillin because he was out of town. But, as explained above, the visitation order did not require both parents to be present at transfers. That order required Adams to transfer LM to Barker once Adams became aware that Barker was McMillin's designated agent and was available to facilitate the transfer. Adams failed to prove that she was unable to transfer LM to Barker on Saturday evening or any time on Sunday. In fact, the evidence before the trial court showed that she was able to transfer LM on Sunday. The trial court therefore did not err by finding that Adams violated the parenting plan.

Because the trial court expressly concluded in its written contempt order that Adams violated the terms of the parenting plan in bad faith, and because that conclusion was based on sufficient findings supported by substantial evidence, we hold that the trial court clearly complied with RCW 26.09.160 and affirm the contempt order.

B.    ATTORNEY FEES

McMillin requests reasonable attorney fees on appeal. Under RCW 26.09.160(2)(b)(ii), a party is entitled to an award of attorney fees on appeal if it successfully defends a contempt order. *Rideout*, 150 Wn.2d at 359. Because we affirm the contempt order McMillin defends, we award McMillin reasonable attorney fees on appeal.[1]

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, J.

We concur:

_____
BJORGEN, A.C.J.

_____
SUTTON, J.

---

[1] McMillin also requests attorney fees under RAP 18.9(a) because Adams's appeal was frivolous. We do not address this issue because we award McMillin reasonable attorney fees under RCW 26.09.160(2)(b)(ii).

7