# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

In the Matter of the Marriage of: )
) No. 75411-4-I
STEVEN MATTHEW KELLY, )
) DIVISION ONE
Appellant, )
) UNPUBLISHED OPINION
and )
)
NATALI KAE SCHUTZ, )
)
Respondent. ) FILED: June 12, 2017

SPEARMAN, J. — A parent who violates a parenting plan in bad faith can be found in contempt. In this case, the father sought to have the mother held in contempt because she took the children on a vacation during spring break that caused him to miss some of his residential time with them. The trial court concluded that the mother's action was not taken in bad faith and denied the motion. It relied on its findings that the parenting plan was ambiguous, that the father had agreed or acquiesced to the mother's practice of taking vacation with the children, that the father failed to timely respond to the mother's request to take the children on vacation, and failed to agree to mediate the mother's request. But because these findings are not supported by substantial evidence, we conclude the trial court abused its discretion when it denied the father's motion and reverse.

## FACTS

Natali Schutz (mother) and Steven Kelly (father) are the parents of two minor children. They are divorced and co-parent their children pursuant to an agreed parenting plan. The plan provides limitations on the father's residential time with the children that progresses in phases. At the time of the events at issue here, the father was in phase two and under section 3.1 of the plan, his residential time is every other weekend and one midweek day. For "other school breaks", which includes spring break,[1] the plan states:

**3.4    Schedule for Other School Breaks**

The child(ren) shall reside with the [mother] during other school breaks, except for the following days and times when the child(ren) will reside with or be with the other parent:

Once the [father] is in Phase III or Phase IV, the following shall apply:

Once the school district in which [the children] are enrolled publishes its master calendar for the school year, the mother and father will determine the school break schedule at the beginning of each school year with the goal that each parent will be with [the children] for at least one (1) school break each year. If the parents are unable to agree, mother shall have residential time with [the children] during mid-winter break in odd numbered years and during spring break in even numbered years. Father shall have residential time with [the children] during mid-winter break in even numbered years and during spring break in odd numbered years.

If [father] is not in Phase III or Phase IV, the schedule in section 3.1 shall apply.

---

[1] Winter break is addressed in section 3.3 of the parenting plan. It provides that once the father is in phase three or four the children shall reside with him during that time. The reference to "other school breaks" in section 3.4 refers to spring and mid-winter break.

Clerk's Papers (CP) at 9-10. In addition, due to ongoing disputes related to the plan, the parents mediated a written agreement requiring the father to provide input on a major decision within 48 hours of receiving notice from the mother that she "is going to make a major decision pursuant to section 4.2." CP at 71. Section 4.2 lists major decisions as those involving education, nonemergency health care, religious upbringing, extracurricular activities, childcare and counseling. Id.

On January 21, 2016, the mother e-mailed the father, notifying him that she intended to take the children on a two week trip during their spring break in April. She offered make up time to the father because "this will interrupt some time with you." CP at 23. The mother followed up by e-mail the next day asking for a confirmation. Hearing nothing, she purchased tickets for the trip, scheduled for March 30 to April 14. The father responded on January 25 that he "can't say yes to your spring break plans because they don't follow the parenting plan." CP at 24. The mother requested mediation of the dispute, which the father rejected. The mother left to travel with the children. The next day, on March 31, 2016, the father filed a motion for contempt.

On May 24, 2016, a commissioner found the mother in contempt. Analyzing the section 3.4 "other school breaks" provision, the commissioner found that because the father was in phase two, the default residential schedule in section 3.1 applied. Therefore, during spring break the father was entitled to time with the children every other weekend and one weekday evening. The commissioner found that because the mother knew that taking the children on

vacation during spring break would deprive the father of his residential time with the children, it was a "bad faith violation of [section 3.4] of the parenting plan." Report of Proceedings (RP) at 26-27. The mother moved to revise the order of contempt.

Part way through the revision hearing, the trial judge told the parties that she knew the mother's previous attorney and "d[id] not hear her cases . . . ." RP at 62. The judge offered to recuse herself, but the parties agreed to proceed with the hearing. The trial court revised the commissioner's order and set aside the finding of contempt against the mother. The court reasoned that the parenting plan was ambiguous, and that, in light of the historical practice of the parents, the mother reasonably believed the parenting plan allowed her to vacation with the children. In addition, the court found that the father did not respond in a timely manner to the mother's e-mail about the trip, and that he refused to mediate this dispute. In light of these findings, the court concluded that the mother did not act in bad faith and therefore was not in contempt.

The father appeals. He argues that the revision hearing violated the appearance of fairness doctrine, and that the judge erred in granting the mother's motion for revision.

## DISCUSSION

Whether to hold a party in contempt for violation of a court order is within the sound discretion of the trial court. We will not reverse a contempt order absent an abuse of that discretion. In re Marriage of James, 79 Wn. App. 436, 439-40, 903 P.2d 470 (1995). A trial court abuses its discretion by exercising it

No. 75411-4-I

on untenable grounds or for untenable reasons. Id. at 440. We review findings of fact in a contempt order for substantial evidence. In re Marriage of Rideout, 150 Wn.2d 337, 351, 77 P.3d 1174 (2003). In determining whether the facts support a finding of contempt, the court strictly construes the order alleged to have been violated, and the facts must constitute a plain violation of the order. In re Marriage of Humphreys, 79 Wn. App. 596, 599, 903 P.2d 1012 (1995). On revision, the superior court reviews de novo the findings of fact and conclusions of law based upon the evidence and issues presented to the commissioner. State v. Ramer, 151 Wn.2d 106, 113, 86 P.3d 132 (2004). Where, as here, the superior court does not agree with the decision, we review only the superior court decision. Id.

The refusal of a parent to perform a duty in a parenting plan is deemed to be bad faith and punished by holding the parent in contempt of court. "If, based on all the facts and circumstances, the court finds after hearing that the parent, in bad faith, has not complied with the order establishing residential provisions for the child, the court shall find the parent in contempt of court." RCW 26.09.160(2)(b). "Parents are deemed to have the ability to comply with orders establishing residential provisions and the burden is on a noncomplying parent to establish by a preponderance of the evidence that he or she lacked the ability to comply . . . or had a reasonable excuse for noncompliance." Rideout, 150 Wn.2d at 352-53.

Here, the trial court found that the mother did not violate the parenting plan in bad faith. The court reasoned that the parents had an established pattern

- 5 -

of permitting the mother to vacation with the children, section 3.4 was confusing, and that the father did not respond promptly to the mother's vacation request and refused mediation:

> 11. The court finds that in light of the restrictions on the petitioner as to taking vacation time with the children (*Phase II does not provide him with vacation time with children*), and in light of the previous trips taken by the respondent during the children's school breaks, it is plausible that the parents handled the schedule of the school breaks as the respondent has presented: by working together to allow the children to go on trips with the respondent with the make-up times for the petitioner.
>
> 12. The court further finds the language in §3.4 to be contradictory and confusing as drafted and as part of the whole Final Parenting Plan.
>
> 13. The court further notes that the petitioner did not respond in a timely manner to the respondent's notification regarding her intended trip. Petitioner delayed his response until after the respondent had made her plans and purchased the tickets. . . .
>
> 14. The court also notes that the petitioner refused to engage in mediation regarding the parties' disagreement on the issue of the respondent's intended travel with the children. The Final Parenting Plan requires that the parties engage in mediation. The respondent provided notice of her travel dates in advance to the petitioner and when there was disagreement, she proposed engaging in mediation but the petitioner refused.
>
> 15. The court therefore does not find that the respondent acted in bad faith.

CP at 177. The father assigns error to these findings.

The father challenges the trial court's finding that the parents handled school breaks differently than the parenting plan provided. He contends that the evidence submitted by the mother fails to support the finding that on previous occasions, the parties had worked together to allow the children to travel with the

mother by providing make up times for the father. In support of this finding, the trial court relied on the mother's declaration and attached e-mails between the parties.

In her declaration, the mother asserted that she had taken at least eight vacations with the children to which the father acquiesced or agreed. But, with two exceptions, she presented no evidence in support of the claim. Nor did she specify whether the vacations fell on school breaks or whether the father missed residential time with the children. Moreover, the e-mail exchanges she offered do not support her claim. One concerned a vacation during mid-winter break in 2014, to which the father objected, but which the mother appears to have taken anyway. The father missed two days of residential time. The other concerned a visit by one of the children to the maternal grandmother from April 24 to May 4, 2014. It appears that the father did not respond to this request and that the visit took place. The father missed three days of residential time.

The evidence establishes only that on one occasion the father failed to respond to the mother's decision to allow one of the children to go on a trip which would cause the father to miss residential time. It does not appear that this occasion occurred during a school break or while the mother was on vacation with the children. This evidence is insufficient to support a claim that the father agreed to or acquiesced in an arrangement for residential time during other school breaks different than that set out in the parenting plan. The trial court abused its discretion in finding otherwise.

Next, the trial court found that the other school breaks provision is "contradictory and confusing." We disagree. Section 3.4 provides that during other school breaks, the children live with the mother, except for the days and times when they live with the father. While he is in phase one or two, the father has the children as provided in the section 3.1 residential schedule. While he is in phase three or four, the parents attempt to agree on a schedule for other school breaks, but if they cannot, each has the children for either spring or mid-winter break based on whether the year is an odd or even number. In other words, while in phase one or two, during other school breaks, the schedule is as provided in section 3.1. While in phase three or four, the parents either agree on a schedule for who has the children during other school breaks or they alternate breaks according to the year. Section 3.4 is neither ambiguous, contradictory nor confusing.

The mother does not dispute that the father was in phase two in March and April of 2016 when she took the children on vacation during spring break. Instead she seems to argue that she reasonably read section 3.4 as a restriction only on the father. In other words, under her reading of that section, regardless of the phase the father was in, she was entitled to go on spring break with the children because the year 2016 was an even number. This reading of section 3.4 is untenable because it is in direct contradiction to the section's clear language: during other school breaks the children shall reside with the mother except (1) with the father by agreement or by even or odd years when the father is in phase three or four or (2) as provided in section 3.1 when the father is in phase one or

two. Because the evidence does not support a finding that the mother's noncompliance with the parenting plan was reasonably excused by confusion about the meaning of section 3.4, the trial court abused its discretion.

We also disagree with the trial court's finding that the father failed to respond to the mother's vacation notice in a timely manner. By the parties' agreement, the mother may take unilateral action on major decisions if the father does not respond in a timely manner. But, because taking a vacation is not a major decision under section 4.2, the father's four-day delay in responding to the mother's vacation proposal was not untimely. This finding is not supported by substantial evidence. To the extent the trial court relied on it to conclude there was no bad faith violation of the parenting plan, it abused its discretion.

Finally, while the father did refuse to engage in mediation, his refusal is irrelevant to whether the mother lacked the ability to comply with the parenting plan or had a reasonable excuse for noncompliance. The trial court abused its discretion when it relied on this fact to find no bad faith.

Section 3.4 of the parenting plan is unambiguous: during other school breaks, while the father is in phase two, residential time is determined as provided in section 3.1. Neither parent is entitled to take vacations that interfere with the other's residential time. In proposing the spring break trip, the mother asked the father to deviate from the parenting plan. He declined. She went on the trip anyway. These facts support the commissioner's order finding the mother in contempt. They do not support the trial court's finding that the mother did not act

in bad faith when she failed to comply with the parenting plan. Accordingly, we reverse the trial court and vacate the order entered on revision.

Attorney Fees

The father requests an award of attorney fees based on his need and the mother's ability to pay. Under RCW 26.09.140, we have the discretion to award attorney fees based on the financial resources of both parties. We consider the arguable merit of the issues on appeal and the financial resources of the parties. In re Marriage of Johnson, 107 Wn. App. 500, 505, 27 P.3d 654 (2001). Exercising our discretion, we decline to award fees on appeal.

The decision of the trial court is reversed and vacated.[2]

WE CONCUR:

_Speerman, J._

_Leirallen, J_

_Becker, J._

---

[2] We reject the father's argument that the revision hearing violated the appearance of fairness doctrine. He contends that the trial judge did not disclose the nature and extent of her connection to the mother's former attorney. Part way through the hearing, the trial judge told the parties that because of her personal relationship with the mother's former attorney, she did not hear her cases. This information was more than sufficient to allow the parties to make an informed decision about whether to proceed. Both parties knowingly and voluntarily agreed to do so. There was no error.