IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Marriage of: | ) | No. 81257-2-I |
| | ) | |
| MEELA PRIBIC, | ) | DIVISION ONE |
| | ) | |
| Respondent, | ) | UNPUBLISHED OPINION |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL ERICKSON, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

HAZELRIGG, J. — In a contempt proceeding, when the facts constitute a plain violation of a court order, the non-moving party must show by a preponderance of the evidence that the violation was not in bad faith. Michael Erickson appeals from an order of the superior court, granting Meela Pribic's motion for revision of a commissioner's order holding her in contempt for violating two provisions of the parenting plan. We conclude that the superior court erred in finding that Pribic did not act in bad faith by violating the separate residence provision of the parenting plan, but did not err in finding no bad faith as to Pribic's violation of the communication provision. We deny Pribic's request for attorney fees on appeal.

FACTS

Michael Erickson and Meela Pribic are the parents of two sons, ages 12 and 10.[1]  Erickson and Pribic lived together for more than eight years, but never married.  After the parties separated in May 2016, Erickson remained in his Maple Valley residence and Pribic moved in with her parents in Kent.  Erickson and Pribic agreed to a residential schedule for their children which granted approximately equal residential time between the parents each week.  In March 2018, Erickson and Pribic engaged in mediation and entered an agreed parenting plan that continued the same residential schedule.

On October 31, 2019, Erickson brought a motion for contempt alleging that Pribic had violated three provisions of the parenting plan.[2]  The two provisions at issue in this appeal are as follows:

> [Section 14.6]: Mother shall find a home for the children that is not her parent's house by August 2019.
> . . . .
> [Section 14.8]: Parties shall communicate with Our Family Wizard except for in emergency circumstances.[3]

Pribic did not deny that she had failed to comply with these provisions.  Rather, she argued that her noncompliance was reasonable under the circumstances.

---

[1] Pribic also has another son from a previous relationship, age 14, who resides primarily with her.

[2] Erickson also asserted that Pribic had violated Section 6 of the parenting plan by refusing his multiple requests to engage in mediation to settle disputes over the parenting plan, including Pribic's failure to move into a new home by August 2019. The commissioner denied contempt for this assertion on the ground that it was not possible to "sufficiently parse through the allegations and decide, in retrospect, which issues [Erickson] raised for mediation which were or were not appropriate for mandatory ADR."

[3] Our Family Wizard is an online and mobile application platform that provides parents with tools for communication, scheduling, and sharing information about the children.

On November 22, 2019, a court commissioner found Pribic in contempt. The commissioner found that Pribic "offered insufficient evidence for the court to find that she was literally unable to follow" Sections 14.6 and 14.8 of the parenting plan. In finding that Pribic had not obeyed Section 14.6, the commissioner stated that "the parenting plan is quite clear" and that Pribic "has made no attempt to modify that provision." In finding that Pribic's failure to follow Sections 14.6 and 14.8 constituted bad faith, the commissioner further specified:

> It appears that Ms. Pribic was unhappy with how the communication in Our Family Wizard was going, and so she simply opted out rather than [seeking] modification of [Section 14.8]. It appears that Ms. Pribic may have not ever intended to comply with the provision in Section 14.6 based on her assertions in her written materials and her argument in court today.

The commissioner's order imposed a civil penalty of $150 and provided that Pribic could purge the contempt by (1) enrolling in Our Family Wizard within 5 days and using it to communicate with Erickson as required by Section 14.8 and (2) moving to a residence which is not her parents' home, as required by Section 14.6. The commissioner did not enter an award of attorney fees, noting that no party had requested it.

Pribic then filed a motion in superior court for revision of the commissioner's contempt order. A hearing took place on January 30, 2020. On February 13, 2020, the superior court granted Pribic's motion for revision and found that she was not in contempt for failing to follow Sections 14.6 and 14.8. The court further ordered that "[g]oing forward, the parties should revisit these two provisions of the parenting plan." The superior court denied Erickson's motion for reconsideration. Erickson now appeals.

3

ANALYSIS

I.      Contempt

All commissioner rulings are subject to revision by the superior court.  RCW 2.24.050.  The superior court reviews de novo the commissioner's findings of fact and conclusions of law based upon the evidence and issues presented to the commissioner.  In re Marriage of Moody, 137 Wn.2d 979, 992-93, 976 P.2d 1240 (1999).  "On appeal, this court reviews the superior court's ruling, not the commissioner's."  Maldonaldo v. Maldonaldo, 197 Wn. App. 779, 789, 391 P.3d 546 (2017).

We review a superior court's decision in a contempt proceeding for an abuse of discretion.  In re Marriage of Littlefield, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997).  A superior court abuses its discretion by exercising it on untenable grounds or for untenable reasons.  In re Marriage of James, 79 Wn. App. 436, 440, 903 P.2d 470 (1995).  A trial court's factual findings regarding contempt will be upheld on appeal if they are supported by substantial evidence.  In re Marriage of Rideout, 150 Wn.2d 337, 350, 77 P.3d 1174 (2003).  Substantial evidence exists if a rational, fair-minded person would be convinced of the truth of the declared premise.  Hegwine v. Longview Fibre Co., 162 Wn.2d 340, 353, 172 P.3d 688 (2007).  "In a contempt case the trial court balances competing documentary evidence, resolves conflicts, weighs credibility, and ultimately makes determinations regarding bad faith."  In re Marriage of Williams, 156 Wn. App. 22, 28, 232 P.3d 573 (2010) (citing Rideout, 150 Wn.2d at 350-51).  We do not review credibility determinations on appeal because "trial judges and court commissioners

routinely hear family law matters" and "are better equipped to make credibility determinations." Rideout, 150 Wn.2d at 352.

A.      Section 14.6

Erickson first argues that the superior court abused its discretion in finding that Pribic's failure to move out of her parents' residence by August 2019, as required by Section 14.6 of the parenting plan, did not constitute bad faith. We agree.

Contempt of court is the intentional disobedience of a lawful court order. In re Marriage of Humphreys, 79 Wn. App. 596, 599, 903 P.2d 1012 (1995) (citing RCW 7.21.010(1)). In the context of dissolution proceedings and legal separation, contempt is governed by RCW 26.09.160. RCW 26.09.160(1) provides in part:

> An attempt by a parent . . . to refuse to perform the duties provided in the parenting plan . . . shall be deemed bad faith and shall be punished by the court by holding the party in contempt of court.

RCW 26.09.160(2)(b) further provides that a court shall find a party in contempt when "the court finds after hearing that the parent, in bad faith, has not complied with the order establishing residential provisions for the child."

The moving party bears the burden of establishing contempt by a preponderance of the evidence. James, 79 Wn. App. at 442. "This showing must include evidence from which the trial court can find that the offending party has acted in bad faith or engaged in intentional misconduct or that prior sanctions have not secured compliance with the plan." Id. If the moving party establishes a prima facie case, "the responding parent must rebut that showing with evidence of legitimate reasons for failing to comply with" the relevant order. Id. at 442; RCW

26.09.160(4). "The trial court will then weigh the evidence" and determine whether contempt exists. James, 79 Wn. App. at 443. The superior court's determination that Pribic did not act in bad faith by failing to move out of her parents' residence by August 2019 was based on the following findings:

> [2(i)]: Regarding the contempt finding for not moving out of her parents' residence by August 2019 as required by the parenting plan the evidence shows a) the mother's monthly income is $2900: $1700 from child support and $1200 from part-time employment; b) the mother qualifies for TANF due to her limited income; c) she is supporting herself and 3 children; d) rent for a small two bedroom apartment runs between $1940 and $2168 not including utilities; e) the mother is attending school and job shadowing to retrain as an assistant physical therapist because she was not able to earn a living in her previous line of work having lost those skills due to being a stay-at-home mom for 8 years.

> [2(ii)]: The mother currently does not bring in sufficient monthly funds to afford an independent residence. As such, she lacks the current ability to comply with the separate residence provision of the parenting plan. While theoretically she could work full-time while attending school, there was insufficient evidence to find that full-time employment that did not conflict with school, was presently available. Without such evidence, she is not acting in bad faith.

(Emphasis added).

Erickson contends that the superior court erred in failing to place the burden of proof on Pribic, as the non-moving party, to show by a preponderance of the evidence that her failure to follow Section 14.6 of the parenting plan was not bad faith. We agree. Although Pribic provided sufficient evidence to show that she could not currently afford an independent residence, she provided no evidence that she had attempted to comply with this provision by seeking employment that would allow her to increase the money available to her while attending school. The

6

superior court appeared to recognize this fact at the revision hearing when it stated:

> So, I guess I'd like to know a little bit more about where's the evidence that shows she is, in fact, attending school and/or meeting her requirements to get to that recertification that's taking her 40 hours a week; that she is not in a position to perhaps go to school at night or to take one class during [one hour a day] and then go to a job. I don't see the evidence here that shows she's in a position where she cannot actually work fulltime and increase the money available to her in record. . . . [L]ots of parents work—have children and they work fulltime, their children are either in school or daycare, and they then also deal with getting their children to extracurricular activities and going to night school.

(Emphasis added). In nevertheless concluding that "there was insufficient evidence to find that full-time employment that did not conflict with school, was presently available," the court improperly placed the burden on Erickson to show by a preponderance of the evidence why Pribic's actions were not bad faith.

> We hold that the moving party has the burden of proving contempt by a preponderance of the evidence. This showing must include evidence from which the trial court can find that the offending party has acted in bad faith or engaged in intentional misconduct or that prior sanctions have not secured compliance with the plan. Once the moving party has established a prima facie case, the responding parent must rebut that showing with evidence of legitimate reasons for failing to comply with the parenting plan. The trial court will then weigh the evidence in the traditional manner and determine whether the moving party has met his or her burden.

James, 79 Wn. App. at 442-43 (emphasis added).

Parents are deemed to have the ability to comply with orders establishing residential provisions and the burden is on a noncomplying parent to establish by a preponderance of the evidence that he or she lacked the ability to comply with the residential provisions of a court-ordered parenting plan or had a reasonable

7

excuse for noncompliance." Rideout, 150 Wn.2d at 352-53 (citing RCW 26.09.160(4)).

We conclude that Pribic did not meet her burden to establish a reasonable excuse for noncompliance with Section 14.6 of the parenting plan. Pribic did establish that she currently lacked the financial resources to afford her own residence. She also established that she had resumed school in January 2019 to eventually re-enter the workforce in the physical therapy field. On this basis, Pribic asserts that as long as she is taking substantive action towards eventual compliance with Section 14.6, she cannot be found in contempt. But Section 14.6 of the agreed parenting plan clearly and unequivocally requires Pribic to move out of her parents' residence by August 2019, not at her convenience. The evidence established that she was not attending school full-time. Rather, she took one class winter quarter, two classes totaling six credits in spring quarter, and volunteer shadowing of a professional during summer. And there was no evidence that she attempted to increase her income so that she could comply with Section 14.6.

In explaining why her noncompliance is reasonable, Pribic claims that Erickson "bullied" her into accepting Section 14.6 of the parenting plan "under immense pressure without any basis whatsoever." She further claims that the current arrangement is good for her and the children and that Erickson is acting unreasonably in seeking to enforce the parenting plan:

> When Mike brought up the clause to move out of my parent's house by a certain deadline at the settlement conference January 2018, I thought it was absurd that Mike would dictate for me when and how to live my life especially since my career was outdated, I have no income besides child support, no spousal support, or any savings. I voiced my "strong disapproval" to those clauses but time

was rushed and I figured it wouldn't hurt to be optimistic with a genuine intention to aim to rebuild my life piece by piece by the August 2019 deadline. However, I am more proud of my decision to switch careers and I am proud of my academic success so far.

. . . .

[W]hen signing the [parenting plan], I never thought Mike would take advantage of this, be so unreasonable and disregard any exception to the rule. Life is not always predictable, in fact there are turns and curves before reaching your destination.

. . . .

I would like to but can not guarantee an exact date to move, life takes many unexpected turns and that day will come when the timing is right. I don't believe my living arrangement should rest on my ex's decision. My move out day depends greatly on the economy, our health, and many other variables that is unpredictable from a distance. I have every intention to do my best for my children and I. In many cultures living with parents/grandparents is desirable and encouraged, it is not viewed as a weakness but as strength in family unity and support.

(Emphasis omitted).

Erickson stated that he asked for this provision in the parenting plan because he feels that Pribic's parents' home is unsuitable for the children. Pribic did not agree to move out of her parents' home "when the timing is right." Rather, following their mediation, Pribic voluntarily agreed to move out by August 2019, which was 20 months after entry of the parenting plan. Pribic has not demonstrated that she lacked capacity to enter into the agreement. If she is permitted to take as long as she likes to comply with this provision, it is rendered illusory. If Pribic wishes to change the terms of the agreement, the proper procedure is to move to modify the parenting plan or to seek to renegotiate its terms. When the superior court asked why modification was not the proper recourse, counsel for Pribic explained that it "takes money . . . to hire an attorney." This is not a reasonable excuse for choosing not to follow the parenting plan.

9

When a contempt ruling is based on an incorrect view of the law or an incorrect legal analysis, it is an abuse of judicial discretion and we must reverse the trial court's finding of contempt. In re Estates of Smaldino, 151 Wn. App. 356, 364, 212 P.3d 579 (2009). The superior court erred in placing the burden of proof on Erickson to demonstrate that Pribic was acting in bad faith. The court's finding that Pribic's actions did not amount to bad faith amount to a de facto modification of the parenting plan that allows her to live at her parents' home as long as she likes. This was an abuse of discretion. We therefore reverse the superior court's order on revision regarding Section 14.6 of the parenting plan.

B.      Section 14.8

Erickson also argues that the trial court abused its discretion in finding that Pribic was not in contempt for discontinuing her use of Our Family Wizard. Erickson argues that the superior court's order improperly delegates to Pribic the unilateral authority whether or when to use Our Family Wizard. He contends that she should have sought the court's permission via a motion to modify the parenting plan or an anti-harassment order.

The superior court found:

[2(iii)]: Regarding the contempt finding for the mother's discontinued use of Our Family Wizard, the Court finds as follows: (a) while the mother did not continue to use Our Family Wizard, she did not do so in bad faith, which the Court must find to make a finding of contempt; (b) the evidence establishes that the use of Our Family Wizard was used as a mechanism to inundate and harass the mother when [its] use was intended to lessen the harassment experienced by the mother; (c) the mother continued to communicate with the father via e-mail.

[2(iv)]: The mother was under no obligation to continue to pay for and use a tool when the use of such tool had become abusive. There was no bad faith in stopping the use of OFW while continuing to communicate via email.

To support her claim that she reasonably discontinued using Our Family Wizard because Erickson was using it to harass her, Pribic submitted copies of their communications via Our Family Wizard, as well as emails and text messages. This evidence amply demonstrates that the parties' communication is rife with conflict regardless of which platform they utilize. Even if there are several reasonable interpretations of the evidence, it is substantial if it reasonably supports the finding. Fred Hutchinson Cancer Research Ctr. v Holman, 107 Wn.2d 693, 713, 732 P.2d 974 (1987). The trial court did not abuse its discretion in finding that Pribic was not in contempt for communicating with Erickson via email instead of Our Family Wizard.

II.    Attorney Fees

Pribic requests an award of attorney fees and costs incurred on appeal under RAP 18.1(a), which authorizes such an award if provided by other applicable law. Pribic cites RCW 26.09.140 and RCW 26.09.160(7) as the basis for her request. RCW 26.09.140 permits an award of fees in consideration of "the financial resources of both parties." RCW 26.09.160(7) provides that "if the court finds the [contempt] motion was brought without reasonable basis, the court shall order the moving party to pay to the nonmoving party, all costs, reasonable attorneys' fees, and a civil penalty of not less than one hundred dollars." Determining whether a fee award is appropriate requires the court to consider the parties' relative ability

to pay and the arguable merits of the issues raised on appeal. In re Marriage of Leslie, 90 Wn. App. 796, 807, 954 P.2d 330 (1998). Erickson's appeal was brought on a reasonable basis. We decline Pribic's request for an award of attorney fees on appeal.

Reversed in part and affirmed in part.

WE CONCUR: