# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In re the Marriage of:<br><br>KATRINA LEE BEARDSLEE,<br><br>            Appellant,<br><br>and<br><br>STEVEN F. BEARDSLEE, JR.,<br><br>            Respondent. | No. 46740-2<br><br><br><br>UNPUBLISHED OPINION |

MAXA, J. – Katrina Beardslee appeals the trial court's ruling that she was in contempt of court for violating the dissolution decree and parenting plan relating to the dissolution of her marriage with her former husband, Steven Beardslee. The trial court ruled that Katrina[1] was in contempt based on its findings that she violated the dissolution decree by failing to make payments on a car awarded to her and failing to cooperate with Steven's efforts to remove her name from the parties' mortgage on a house awarded to him. A different superior court judge entered a contempt order based on the trial court's oral ruling and added a ruling that Katrina was in contempt for violating the parenting plan by withholding visitation of the couple's child from Steven.

We hold that (1) the trial court improperly expanded the protective order hearing to address contempt, but the error was harmless because Katrina does not show that she was

---

[1] To avoid confusion, we refer to the parties by their first names. We mean no disrespect.

prejudiced; (2) substantial evidence supports the trial court's finding that Katrina violated the dissolution decree by failing to make car payments and failing to timely sign a document that would have removed her name from the parties' mortgage; (3) the trial court erred in ruling that Katrina was in contempt for violating the parenting plan because the judge that presided over the hearing made no such ruling and there was no finding of bad faith; and (4) the trial court properly imposed a remedial, not punitive, sanction for Katrina's contempt.[2]

Accordingly, we affirm the trial court's findings of contempt regarding the dissolution decree, but reverse the finding of contempt regarding the parenting plan.

FACTS

Katrina and Steven were married in 2007. They had a daughter, AB, who was born in 2009. The couple separated in April 2012. On August 24, the trial court entered a final parenting plan. On January 3, 2013, the trial court entered findings of fact and conclusions of law and a decree of dissolution of the marriage. The dissolution decree incorporated the final parenting plan.

*Dissolution Decree*

The dissolution decree awarded a 2008 Scion to Katrina. The dissolution decree made Katrina responsible for the Scion payments, but Steven remained the primary person on the car loan from Alaska USA Federal Credit Union.

---

[2] Katrina also assigns error to the trial court's finding that Steven was not in contempt of court. However, she presents no argument on this assignment of error. The failure to present an argument supporting an assignment of error waives the assignment. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). Therefore, we do not address this argument.

The dissolution decree awarded the couple's home and responsibility over the mortgage to Steven and included a series of specific provisions about the parties' mortgage responsibilities:

> Wife shall execute a Quit Claim Deed to husband and shall cooperate to assist him in any refinancing, if possible, with the exception she shall not be required to assume any debt on the property or co-sign in any manner.
>
> Husband shall be required to make an equalizing transfer payment to wife in the amount of $12,593.00. This amount shall be paid at a rate of $350.00 per month without an interest obligation. Payments shall commence April 1, [2013], and each month thereafter until the obligation is paid.
>
> If husband is able to refinance or modify the home mortgage, removing the wife as debtor on the home, the balance of the equalization transfer payment in section 3.15.2 shall be deemed satisfied and paid in full.

Clerk's Papers (CP) at 24-25.

> A hold harmless provision provided:
>
> Each party shall hold the other party harmless from any collection action relating to separate or community liabilities set forth above, including reasonable attorney's fees and costs incurred in defending against any attempts to collect an obligation of the other party.

CP at 23.

*Parenting Plan*

The parenting plan included a detailed residential schedule for AB. Under the parenting plan, AB was to spend most weekends in Steven's care. The parenting plan also designated a guardian ad litem (GAL) for AB.

*Motions for Contempt*

On May 2, 2013, Steven filed a motion for contempt against Katrina, alleging that she violated the dissolution decree by (1) failing to make car loan payments to Alaska USA Federal Credit Union, (2) refusing to timely sign documents to refinance or modify the home mortgage, and (3) failing to make deposits to blocked accounts for AB. Steven did not allege any violation of the parenting plan.

On May 13, Katrina filed a motion for contempt against Steven, alleging that he violated the dissolution decree by (1) failing to turn over certain personal property and turning over a vintage Pontiac in poor condition, (2) failing to remove her from the home mortgage, (3) failing to make equalization payments awarded by the trial court, and (4) failing to pay daycare and healthcare expenses for AB.

The trial court ordered the parties to select a date for a 30 minute hearing on both contempt motions, and a hearing was set for September 27.

*Sexual Abuse Allegations*

In May or June, Katrina called Child Protective Services (CPS) and law enforcement to report suspicions that Steven had inappropriately touched AB. According to Katrina, AB said that Steven tickled her private parts and tried to pull them out. Katrina obtained a sexual assault protection order against Steven while CPS and law enforcement investigated the allegations.

CPS ultimately concluded that the allegations were unfounded and the prosecutor's office declined to file charges.

On August 16, the GAL filed a motion to set a review hearing on the issues related to the alleged sexual abuse in light of the fact that the prosecutor's office had declined to file charges against Steven.

*Order Setting Hearing*

A court commissioner entered an order stating "Based on the GAL's motion, the criminal investigation coming to a close, the protection order issue will be heard at a testimonial hearing on 9/5/2013 at 9:30 am in front of Judge Godfrey." CP at 40. The order also included the crossed out language: "All other matters will be heard on 9/27/2013 as previously set," which counsel for Katrina and Steven initialed. CP at 40.

*Protective Order and Contempt Hearing*

On September 5 and 6, Judge Godfrey heard testimony from Katrina, Steven, and a number of other witnesses regarding the sexual abuse allegations, protective restraining order for stalking, and the numerous contempt issues. The third witness was Katrina, and she objected when Steven started questioning her regarding contempt issues. Judge Godfrey overruled the objection and stated that all issues would be addressed in the hearing. Katrina did not ask for more time to prepare for the contempt issues or move for a continuance.

Judge Godfrey issued an extensive oral ruling at the conclusion of the trial. He expressly addressed each of the contempt allegations made by Steven against Katrina:

> His contempts filed May second, not paying debt to Alaska credit union, is she in contempt? Yes. . . . Refused to timely sign the documents for the modification? Yes. Not making a deposit to the kid's account? I disagree with that. No.

Report of Proceedings (RP) at 248. He also addressed each of the contempt allegations made by Katrina against Steven and denied each allegation.

Judge Godfrey also commented on the fact that Katrina changed AB's daycare and prevented Steven from visiting AB during the abuse investigation. He concluded by saying "Visitation is instituted now. . . . I will expect his visitation to take place accordingly." RP at 250-51. However, Judge Godfrey made no finding that Katrina had violated the parenting plan or had acted in bad faith regarding visitation.

*Trial Court's Written Order*

At some point after trial, Judge Godfrey recused himself from all matters involving Katrina's counsel. Judge Godfrey had not yet entered written findings of fact and conclusions of law regarding his oral contempt rulings.

The case was assigned to Judge McCauley. Judge McCauley and counsel for Katrina and Steven agreed that the written findings and order would be based on Judge Godfrey's oral ruling, the exhibits presented at trial, and counsels' written and oral arguments on the matter.

Judge McCauley heard the parties' arguments on the proposed findings and order. He made rulings on specific provisions, including granting Steven 37.5 days of make-up visitation and awarding Steven $7,500 in attorney fees. But the parties could not finalize an order.

The parties again appeared before Judge McCauley to discuss and finalize the written findings and order. The findings and order proposed by Steven included a finding that the trial court sua sponte found at the contempt hearing that Katrina had violated the parenting plan. After argument about whether Judge Godfrey's oral ruling supported this finding, Judge McCauley accepted the finding as proposed by Steven.

The final written order on contempt included findings that Katrina violated the dissolution decree by (1) failing to pay the debt owed to Alaska USA Federal Credit Union and

6

hold Steven harmless from collections related to the debt and (2) refusing to timely sign documents or otherwise cooperate in assisting Steven in refinancing or modifying the home mortgage to remove her name. The order also contained a finding that:

> Katrina Beardslee failed to comply with the parenting plan and withheld visitation from father for protracted periods of time without cause and changed the daycare provider and otherwise forced visitation changes outside of the order. The court sua sponte made these findings at the contempt hearing and held Katrina Beardslee in contempt for doing so.

CP at 142.

The written order included conditions for purging each contempt finding. Regarding Katrina's failure to timely sign the mortgage documents, the order stated that Katrina "shall cooperate to assist Mr. Beardslee in any refinancing or other restructuring of the mortgage necessary to remove her name from said obligation." CP at 145. The order also stated that Steven would not be required to make any equalization payment for 36 months. If at the end of that period Katrina had been removed from the mortgage obligation, the equalization payments would be deemed paid in full. If Katrina had not been removed, Steven would be required to pay the equalization payment in full.

Katrina appeals the trial court's order finding contempt.

ANALYSIS

A.    SCOPE OF THE CONTEMPT HEARING

Katrina argues that the September 5, 2013 hearing was intended to address only the protective order and her motion for a restraining order against Steven, but the trial court impermissibly expanded the scope of the hearing to include the contempt issues. She argues that the trial court's expansion of the hearing denied her an opportunity to properly prepare her case

and defend herself. We agree that the trial court erred, but hold that Katrina did not show that she was prejudiced as a result.

The commissioner's order setting the September 5 hearing was expressly limited to the protective order. The trial court did not give the parties any notice that the contempt motions would be addressed at the hearing. Fairness dictates that the parties be informed within a reasonable time before a scheduled hearing on one issue if the hearing is expanded to cover another issue.

However, even if Katrina did not have proper notice that the contempt motions would be addressed at the September 5 hearing, she fails to show that considering the contempt issues at the hearing caused her any prejudice. Katrina argues that the opening statements from both counsel were limited to the protective order and restraining order issues, indicating that the parties were unaware that the hearing would involve contempt matters. But this shows that *both* parties were mistaken. Katrina does not indicate that she was at any greater disadvantage than Steven under such circumstances.

Katrina now argues that she was prejudiced because she could not call certain witnesses, such as bank representatives, or prepare certain exhibits because of the lack of notice. However, she did not make this argument at the time. Nothing in the trial court record reflects that Katrina was unable to call certain witnesses. Further, the trial court made it clear before the lunch recess on the first day of the hearing that the hearing would include all contempt issues, and the hearing lasted two days. Katrina does not explain why she could not have contacted additional witnesses and prepared additional exhibits before the second day of the hearing.

Finally, if Katrina could not secure the attendance of witnesses or did not have time to prepare exhibits, she could have filed a motion for a continuance. Nothing in the record indicates that Katrina requested a continuance. Instead, at the end of the first day of the hearing both parties stipulated to an order setting the matter over for the next day. If Katrina was concerned about her preparation for the contempt motions, she could have asked that the second day of the hearing be held at a later date. Nothing in the record indicates that Katrina objected to proceeding with the second day of the hearing on the next day.

Accordingly, we hold that although the trial court improperly expanded the protective order hearing to a hearing that addressed contempt, nothing in the record shows that the trial court's procedure prevented Katrina from properly preparing her case or defending herself.

B.      CONTEMPT FINDINGS

Katrina argues that the trial court erred in finding her in contempt of the dissolution decree for failing to make car payments to Alaska USA and failing to timely sign a mortgage document. She also argues that the trial court erred in ruling that she was in contempt for violating the parenting plan. We disagree that the trial court erred in finding her in contempt of the dissolution decree, but agree that the trial court erred in ruling that she was in contempt for violating the parenting plan.

1.      Standard of Review

We review a contempt order for abuse of discretion. *In re Marriage of James*, 79 Wn. App. 436, 439-40, 903 P.2d 470 (1995). A trial court abuses its discretion when its decision rests on unreasonable or untenable grounds or when its ruling relies on an erroneous view of the law

or incorrect legal analysis. *In re Marriage of Schnurman*, 178 Wn. App. 634, 638, 316 P.3d 514 (2013), *review denied,* 180 Wn.2d 1010 (2014).

We review whether findings of fact are supported by substantial evidence and whether the findings support the conclusions of law. *In re Marriage of Wilson*, 165 Wn. App. 333, 340, 267 P.3d 485 (2011). Substantial evidence exists when there is sufficient evidence to persuade a fair-minded, rational person of the finding's truth. *Id.* We do not substitute our judgment for the trial court's judgment, weigh the evidence, or evaluate witness credibility. *Id.*

2. Legal Principles

The general civil contempt statute states that a party who intentionally disobeys any lawful judgment, decree, order, or process of court may be found in contempt of court. RCW 7.21.010(1)(b). A trial court has the authority to enforce its dissolution decree in a contempt proceeding. *In re Marriage of Mathews*, 70 Wn. App. 116, 126, 853 P.2d 462 (1993).

However, contempt for failing to comply with a parenting plan is governed by a different statute than the general civil contempt statute. RCW 26.09.160(2)(b) provides, "If, based on all the facts and circumstances, the court finds after hearing that the parent, *in bad faith*, has not complied with the order establishing residential provisions for the child, the court shall find the parent in contempt of court." (Emphasis added).

3. Failure to Pay Alaska USA Car Loan

Katrina argues that the trial court abused its discretion by finding her in contempt for her failure to make car payments to Alaska USA and hold Steven harmless for that debt. We disagree.

10

The trial court made a finding that "Katrina Beardslee failed to comply with the terms of the Decree of Dissolution . . . in that she did not pay the debt owed to Alaska USA Federal Credit Union and hold Steven Beardslee harmless from collections related thereto." CP at 142. The trial court also found "Katrina Beardslee could have paid the debt owed to Alaska USA Federal Credit Union, however, she refused to do so." CP at 142. These findings were supported by sufficient evidence.

Katrina testified that just after she was awarded the Scion in the dissolution, she called Alaska USA to inform them that she would not make any more payments. She did not inform Steven. Then Katrina arranged for Alaska USA to repossess the car, but did not inform Steven. Alaska USA sold the Scion and sought a deficiency. Evidence at the hearing showed that Steven received a letter from Alaska USA stating that there was a deficiency on the sale of the car, that Steven was responsible for it, and that the deficiency would be reflected on his credit report. Steven testified that he was contacted by several debt collectors for Katrina's debts. This evidence supported the trial court's finding that Katrina failed to pay the Alaska USA debt and hold Steven harmless.

The evidence also showed that Katrina bought a new car shortly after the Scion was repossessed. Katrina testified that she was current on her new car payments of $400 a month. This evidence supported the trial court's finding that Katrina could have paid the Alaska USA debt but refused to do so.

Katrina argues that the trial court abused its discretion for failing to "analyze the rationale for delay in payment and assessment of measureable harm" to Steven. Br. of Appellant at 19. However, she provides no authority suggesting that the trial court was required to consider the

reasonableness of her decision to allow Alaska USA to repossess the car. The dissolution decree clearly provided that Katrina was responsible for the Scion payments and that she hold Steven harmless from any collection action. There was no requirement that Katrina's failure to make payments be unreasonable.

We hold that substantial evidence supports the trial court's finding that Katrina violated the dissolution decree by failing to make car payments to Alaska USA. Accordingly, we hold that the trial court did not abuse its discretion in finding Katrina in contempt on this basis.

4. Failure to Timely Sign Mortgage Modification Document

Katrina argues that the trial court erred in finding her in contempt of the dissolution decree for failing to sign a mortgage modification document because the document would not have removed her name from the mortgage. We disagree.

The decree required Katrina to "cooperate to assist [Steven] in any refinancing," but she was not required to co-sign or assume any debt. CP at 24. Under the decree, Steven would begin making equalization payments to Katrina unless he successfully removed her name from the mortgage before April 1. The question here is whether the document Katrina failed to timely sign would have removed her name from the mortgage.[3]

On February 19, Steven sent Katrina a letter from Bank of America and requested that she sign and return the letter as soon as possible so that he could complete the mortgage

---

[3] The dissolution decree does not contain an express requirement that Katrina cooperate with removing her name from the mortgage, only that she cooperate with refinancing efforts. However, Katrina does not argue that she had no duty to sign the letter at all, but only that she did not have a duty to sign the letter because it would not have actually removed her name from the mortgage. Katrina implicitly concedes that she had an obligation to cooperate with Steven's attempt to remove her name from the mortgage.

modification process.  The letter stated above the signature line:  "This letter is to verify that I am aware that a Qualifying Assumption to allow removal of my name from the above loan is in process."  CP at 88.

On February 28, Katrina asked for more information and proof that signing the letter would fully release her from the mortgage.  Steven responded on March 12 saying that the document was necessary to remove Katrina's name from the mortgage.  Katrina returned the signed letter on March 13.

Steven testified that Katrina's delay caused the assumption to fail.  Steven was able to modify the mortgage without Katrina's signature, resulting in lower payments under a trial plan.  But Katrina's name remained on the mortgage and Steven started making equalization payments.

In its oral ruling, the trial court stated the following about Katrina's failure to sign the relationship letter:

> [I]t says right on it, about taking your name off the loan, and you wouldn't sign it, we need more. . . . I will go through every one of these exhibits personally with you.  February 28th, 2013, document five, letter from [Katrina's counsel].  Read the document.  It says right in there about taking you out.  [March] 12th, number six, [Steven's counsel], we need it to conclude the modification process, still don't have it.  Finally the next day, problem solved, it is signed.  Why wasn't it signed in the first place?  It was right there.

RP at 243-44.

Katrina argues that the letter would not have actually removed her name from the mortgage, and therefore her delay in signing it was not a violation of the decree.  She presented a document purported to be a summary of modification communications with Steven from Bank of America, which seemed to indicate that Steven could not complete the assumption process because he was in the process of modifying the mortgage or because he was delinquent on

payments. However, whether or not Steven's assumption efforts would have failed for some other reason is irrelevant. Further, the summary of phone calls between Steven and Bank of America is hearsay evidence which likely was given little weight by the trial court compared to the letter, which on its face stated that removal of Katrina's name from the loan was in process.

We hold that substantial evidence supports the trial court's finding that Katrina violated the dissolution decree by failing to timely sign and return the relationship letter. Accordingly, we hold that the trial court did not abuse its discretion in finding Katrina in contempt on this basis.

     5.    Finding of Violation of the Parenting Plan

Katrina argues that the trial court erred in ruling that she was in contempt of court for violating the parenting plan by withholding visitation of AB from Steven. We agree.

The trial court erred in two ways in ruling that Katrina was in contempt for withholding visitation from Steven in violation of the parenting plan. First, Judge McCauley's order necessarily was limited to Judge Godfrey's oral findings and rulings following the contempt hearing. Judge McCauley stated in his order that Judge Godfrey sua sponte held Katrina in contempt for violating the parenting plan but the record does not support this statement. Nothing in the record suggests that Judge Godfrey found that Katrina violated the parenting plan by withholding visitation or ruled that she was in contempt for doing so. Therefore, there was no basis in the record for including in the written order a finding of contempt for violation of the parenting plan.

Second, in order to hold a party in contempt for violating a parenting plan, the trial court must make a specific finding of bad faith. RCW 26.09.160(2)(b); *James*, 79 Wn. App. at 441.

14

Here, Judge Godfrey did not make an oral finding that Katrina acted in bad faith in preventing

Steven from seeing AB during the abuse investigation. Judge Godfrey did indicate a suspicion

of bad faith based on the timing of the abuse allegation, but clearly stated that it was not making

a finding. "[O]ne of the things I find disturbing, and *I am not going to make a finding that it's*

*factual*, but I will tell you, it raises a real ugly thought in my head, and that's the timing of all of

this." RP at 244 (emphasis added).

Further, Judge McCauley's written order did not include a finding that Katrina withheld

visitation in bad faith. The order simply states that Katrina violated the parenting plan.

Accordingly, we hold that the trial court erred in finding Katrina in contempt of court for

violating the parenting plan.

C.     PURGING CONDITIONS

Katrina argues that the trial court failed to provide a way for her to purge through an

affirmative act her contempt violation for failing to timely sign the mortgage document. She

argues that this failure made the purging conditions punitive, which required additional due

process. We disagree.

1.     Legal Principles

Under RCW 7.21.030(1), a trial court can impose "remedial" sanctions on a person for

contempt of court after notice and hearing. However, under RCW 7.21.040(1)-(2) a trial court

may impose "punitive" sanctions only after a complaint or information is filed based on probable

cause. In addition, the trial court must provide those due process rights afforded to criminal

defendants before imposing a punitive sanction. *In re Pers. Restraint of King*, 110 Wn.2d 793,

800, 756 P.2d 1303 (1988). A court's authority to impose sanctions for contempt is a question of

law that we review de novo. *In re Dependency of A.K.*, 162 Wn.2d 632, 644, 174 P.3d 11 (2007).

A punitive sanction is meant to punish a past contempt for the purpose of upholding the authority of the court and is considered criminal in nature. *Id.* at 645-46. A remedial sanction is imposed for the purpose of coercing performance when the contempt consists of the omission or refusal to perform an act that is still within the contemnor's power to perform. *Id.* at 645. A sanction will be considered remedial rather than punitive if the contemnor is able to purge the contempt through an affirmative act. *Id.* at 646. In addition, remedial sanctions authorized by statute include "[a]n order designed to ensure compliance with a prior order of the court." RCW 7.21.030(2)(c).

2.  Nature of the Sanction

The trial court's conditions for purging the contempt for failing to timely sign the mortgage documents were that Steven's obligation to make equalizing payments would be deferred 36 months if he did not remove Katrina from the mortgage and Katrina was required to cooperate with Steven to refinance or restructure the mortgage in order to remove her name from the mortgage. Katrina claims that deferring equalization payments is a punitive sanction because she cannot purge it through an affirmative act.

The dissolution decree provided that Katrina was not entitled to any equalizing payments if she was removed from the mortgage before April 1, 2013. Katrina's contempt prevented implementation of this provision. The court found that Katrina "could have signed the documents to refinance or modify the mortgage loan in a timely manner and remove her name from the modified loan; however, she simply refused to timely do so." CP at 142. In this

context, giving Steven additional time to remove Katrina from the mortgage was "designed to ensure compliance with a prior order of the court," an authorized remedial sanction under RCW 7.21.030(2)(c). This sanction also included a requirement that Katrina cooperate with Steven's efforts to remove her from the mortgage obligation, and therefore she was able to purge the contempt through her affirmative acts of cooperation.

Accordingly, we hold that the trial court's purging conditions were not punitive and therefore did not require additional due process.

D.    ATTORNEY FEES ON APPEAL

1.    Katrina's Request

Katrina asserts she is entitled to attorney fees under RCW 26.09.140, which grants a court discretion – after considering the financial resources of both parties – to award attorney fees for the expense of maintaining or defending "any proceeding" under chapter 26.09 RCW. Chapter 26.09 RCW governs the dissolution of marriage. RCW 26.09.140 also allows an appellate court to award attorney fees on appeal.

However, RAP 18.1(c) requires an affidavit of financial need, filed at least 10 days before the date set for consideration. Katrina did not file an affidavit of need. Therefore, we do not consider her request for attorney fees.

2.    Steven's Request

Steven asserts that he is entitled to attorney fees because Katrina's appeal is frivolous. RAP 18.9(a) authorizes the appellate court, on its own initiative or on motion of a party, to order

17

a party or counsel who files a frivolous appeal "to pay terms or compensatory damages to any other party who has been harmed." An appeal is frivolous if, considering the entire record, we are convinced that the appeal presents no debatable issues upon which reasonable minds might differ and that it is so devoid of merit that there is no possibility of reversal. *Kinney v. Cook*, 150 Wn. App. 187, 195, 208 P.3d 1 (2009).

Katrina's appeal raised debatable issues – the trial court's errors regarding the hearing procedure and its finding of contempt for violating the parenting plan. Accordingly, we decline to award Steven attorney fees under RAP 18.9(a).

Steven also argues that he is entitled to attorney fees under RCW 26.09.160(2)(b)(ii), which allows recovery of attorney fees for defending a finding of contempt under RCW 26.09.160 for violation of the parenting plan. *In re Marriage of Rideout*, 150 Wn.2d 337, 359, 77 P.3d 1174 (2003). However, we decline to award Steven attorney fees on this basis because he did not prevail in his defense of the contempt finding regarding the parenting plan.

## CONCLUSION

We affirm the trial court's findings that Katrina was in contempt of the dissolution decree, but we reverse the trial court's finding that Katrina was in contempt of the parenting plan. We decline to award attorney fees to either party.

No. 46740-2-II

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports, but will be filed for public record in accordance with RCW

2.06.040, it is so ordered.

_____, A.C.J.
MAXA, J.

We concur:

_____, C.J.
BJORGEN, C.J.

_____, J.
SUTTON, J.