IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| CHRISTINE CRABTREE, | ) | No. 81164-9-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DONALD CLINTON CRABTREE, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |
| | ) | |

VERELLEN, J. — In Donald Crabtree's appeal of the January 30, 2020, contempt order, he challenges the underlying South Carolina divorce decree, arguing that it unconstitutionally impaired his first amendment rights. Because Donald does not establish that a Washington trial court committed a manifest error affecting his constitutional rights, his arguments are ineffective.

His arguments that a trial court commissioner was biased and that he was not in contempt are not supported by the record before us.

As the prevailing party at trial, and now on appeal, Christine is entitled to attorney fees for successfully enforcing the child support and maintenance orders.

We affirm.

FACTS

On January 22, 2018, a South Carolina trial court finalized Donald and Christine Crabtree's divorce.[1]  The South Carolina court ordered Donald to pay $1,404 per month in child support and $1,600 per month in spousal maintenance.

Both parties ultimately relocated to Washington.  In March 2019, Christine filed a notice of registration and a request to register the South Carolina divorce decree in Washington.  That same day, Christine filed a motion for a contempt hearing arguing that Donald failed to comply with the South Carolina court's January 22 order.

Christine's contempt motion stated that Donald was five months behind on child support ($7,020) and spousal maintenance ($8,000).  On March 21, Donald was served with the notice of registration, the motion for contempt hearing, the order to show cause, and the request to register the South Carolina divorce decree.

On April 10, 20 days after Donald was served, the trial court ordered Donald to appear in court for a hearing on Christine's motion for contempt.  The hearing was continued to April 26.

At the April 26 hearing, the trial court found Donald in contempt for failing to pay his support obligations.  Donald subsequently appealed the trial court's April 26, ruling to this court.[2]  This court upheld the trial court's decision.[3]

---

[1] Because Donald and Christine Crabtree share the same last name, we refer to them by their first names for clarity.

[2] Matter of Marriage of Crabtree, No. 80165-1-1 (Wash. Ct. App. 04/20/20), https://www.courts.wa.gov/opinions/pdf/801651.pdf (unpublished).

[3] Id.

The trial court found Donald in contempt four more times, most recently, on January 30, 2020.[4] On January 30, the court held Donald in contempt of the court's December 6, 2019 written order for failing to pay $3,000 by January 29, 2020.[5] The court also ordered Donald to pay $600, an amount outstanding from the court's September contempt order. If the $3,600 was not paid by the end of the day on January 30, 2020, then sanctions of $100 per day would accrue "starting January 31, 2020."[6]

Donald appeals the January 30, 2020 contempt order.

## ANALYSIS

### I.  South Carolina Divorce Decree

Donald argues that the South Carolina divorce decree was unconstitutional because "it directly attack[ed] [Donald's] constitutional right to freedom of speech and freedom of religion."[7] Specifically, he contends that the South Carolina trial court's findings, namely that he manipulatively used scriptures to undermine the marriage and that Christine was credible, constituted a "manifest prejudice against religious expression."[8]

---

[4] The trial court also ordered Donald in contempt on July 3, 2019, September 27, 2019, December 6, 2019, and January 30, 2020. Clerk's Papers (CP) at 916-68.

[5] CP at 965-68. The December 6, 2019, written contempt order directed Donald to pay $3,000 by January 29, 2020. CP at 949.

[6] CP at 968.

[7] Appellant's Br. at 7.

[8] Appellant's Br. at 8-23. Donald also challenges the South Carolina trial court's findings that Donald refused counseling, that Christine encouraged their children to have a relationship with Donald, that Christine was the more well-adjusted parent, and that the court "ignor[ed] the timeline." Appellant's Br. at 16-19.

Donald's arguments fail for several reasons. First, he did not raise this challenge in the January 30, 2020 contempt proceeding on appeal. We will only consider issues raised for the first time on appeal if the claim of error is "a manifest error affecting a constitutional right."[9] Only a showing of actual prejudice makes the error manifest.[10] "'To demonstrate actual prejudice, there must be a plausible showing by the [appellant] that the asserted error had practical and identifiable consequences in the trial of the case.'"[11] Here, Donald does not argue that the Washington trial court erred by affecting his constitutional rights; rather, he contends that the South Carolina trial court is responsible for the constitutional error by "us[ing] . . . his Christian faith as the causing factor establishing the determination of alimony [and] spousal maintenance" in the divorce decree.[12] Because Donald does not demonstrate that the Washington court committed a manifest constitutional error, his constitutional arguments are not properly before us.

Second, Donald appeals only the January 30, 2020 contempt order, which makes no reference to the South Carolina divorce decree.[13]

---

[9] State v. Kirkman, 159 Wn.2d 918, 926, 155 P.3d 125 (2007); see RAP 2.5(a)(3).

[10] Id.

[11] State v. Kalebaugh, 183 Wn.2d 578, 585, 355 P.3d 253 (2015) (alteration in original) (quoting id. at 935).

[12] Appellant's Br. at 7.

[13] CP at 965-68.

Third, Donald's arguments are otherwise untimely.[14]  A confirmation of a registered support order by operation of law "precludes further contest of the order."[15]  Here, on March 21, Donald was served with a notice of Christine's request to register the South Carolina divorce decree in Washington, but he failed to contest the validity of the order within the 20-day statutory period.  Therefore, the support and maintenance order became operational in Washington and any "further contest of the order" was precluded.

Finally, in his prior appeal before this court, Donald attacked the South Carolina divorce decree, arguing that "the amount of income the South Carolina court imputed to him was unfair and not valid" and that the decree was "unlawful . . . because it was 'founded on the novel idea of religious abuse.'"[16]  This court rejected his arguments as an improper collateral attack, noting that under Washington's collateral bar rule, "'a court order cannot be collaterally attacked in contempt proceedings arising from its violation, since a contempt judgment will normally stand even if the order violated was erroneous or was later ruled invalid.'"[17]  And in rejecting Donald's argument that the South Carolina divorce decree was unlawful, this court stated the argument raised for the first time on appeal "is not adequately briefed to discern whether any alleged constitutional error was manifest, much less to

---

[14] RCW 26.21A.520(2)(b).

[15] RCW 26.21A.535.

[16] Crabtree, No. 80165-1-I, slip op. at 11, 14.

[17] Id. at 11 (quoting State v. Coe, 101 Wn.2d 364, 369-70, 679 P.2d 353 (1984)).

warrant consideration on the merits."[18]  In this appeal, Donald again argues for the first time on appeal that the South Carolina divorce decree unconstitutionally impaired his first amendment rights and that the court's findings were not supported by substantial evidence.[19]  For the same reasons stated in his prior appeal and under the law of the case doctrine,[20] his renewed and overlapping arguments in this appeal fail.

## II.  Bias

Donald argues that "Commissioner Pamela Englett acted with implicit bias [and] prejudice against" him by issuing the January 30, 2020 order using "coercive measures."[21]  Washington's fairness doctrine is violated if "'a disinterested person, having been apprised of the totality of a [commissioner's] personal interest in a matter being acted upon, be reasonably justified in thinking that partiality may exist.'"[22]  "The party asserting a violation of the doctrine must produce sufficient evidence demonstrating bias, such as personal or pecuniary interest on the part of the commissioner; mere speculation is not enough."[23]

---

[18] Id. at 14.

[19] Compare Appellant's Br. at 8-23 with Crabtree, No. 80165-1-I, slip op. at 14.

[20] Spencer v. Badgley Mullins Turner, PLLC, 6 Wn. App. 2d 762, 782, 432 P.3d 821 (2018) (quoting Lodis v. Corbis Holdings, Inc., 192 Wn. App. 30, 54, 366 P.3d 1246 (2015)).

[21] Appellant's Br. at 23, 28.

[22] Bunko v. City of Puyallup Civil Serv. Comm'n, 95 Wn. App. 495, 503, 975 P.2d 1055 (1999) (alteration in original) (quoting Swift v. Island County, 87 Wn.2d 348, 361, 552 P.2d 175 (1976)).

[23] Id. (citing Sherman v. Moloney, 106 Wn.2d 873, 883-84, 725 P.2d 966 (1986); City of Lake Forest Park v. Shorelines Hearings Bd., 76 Wn. App. 212, 217, 884 P.2d 614 (1994)).

Donald compares the contempt hearings conducted by Commissioner Englett with those by Commissioner Cuevas. He contends that at the hearing on January 30, 2020, Commissioner Englett was biased against him for failing to accept his assertion that he had already deposited $3,000 in Christine's account and by ordering him to pay $600 more than Commissioner Cuevas had ordered at the December hearing.

But at the January hearing, Commissioner Englett stated, "I hear from you that $3,000 went in yesterday. I don't hear from them that they've gotten it. So what I'm going to do is make that $3,000 a judgment today, and if it went in, it's no problem [for Donald]."[24] Donald agreed. And the record establishes that the $600 was an amount that the court originally ordered in September, that Donald never paid.

Donald's arguments asserting bias are not supported by sufficient evidence and amount to mere speculation.

III. Contempt Finding

Donald contends that the court abused its discretion in finding him in contempt on January 30, 2020. We review a trial court's punishment for contempt of court for an abuse of discretion.[25]

Under RCW 26.18.050(1), if "an obligor fails to comply with a support or maintenance order, a petition or motion may be filed . . . to initiate a contempt action as provided in chapter 7.21 RCW."

---

[24] Report of Proceedings (Jan. 30, 2020) at 8.

[25] In re Marriage of James, 79 Wn. App. 436, 439-40, 903 P.2d 470 (1995) (citing In re Marriage of Mathews, 70 Wn. App. 116, 126, 853 P.2d 462 (1995)).

Here, at the December 6, 2019 contempt hearing, the court noted that at the September hearing, the court ordered Donald to pay $2,000 by November, but as of the December hearing, he had only paid $1,400, leaving $600 outstanding. At the December hearing, the court ordered Donald to pay $3,000 by January 29, 2020. As noted above, during the hearing on January 30, 2020, Donald claimed that he had deposited $3,000 in Christine's account, but he provided no evidence to support his assertion. As a result, the court ordered Donald to pay $3,600, which included the $3,000 that he failed to pay from the December order and the $600 outstanding from the September order.[26] And because the court did not order the $100 per day sanctions to start until January 31, 2020, the court recognized that if in fact the $3,000 had been paid, then that portion of the contempt order would not be a concern for Donald.

Because Donald provided no evidence confirming his assertion that he deposited $3,000 in Christine's account and offered no explanation for why he never paid the $600 remaining from the September order, the court did not abuse its discretion in ordering Donald to pay $3,600.

IV.  Attorney Fees

Donald argues the trial court erred by awarding attorney fees to Christine, and Christine requests attorney fees on appeal.

---

[26] On December 6, 2019, Donald was found in contempt for failing to obey the September 27, 2019 contempt order which ordered him to pay $2,000 by November 15, 2019.  CP at 947.

"In any action to enforce a support or maintenance order . . . the prevailing party is entitled to a recovery of costs, including an award for reasonable attorney fees."[27]

Because Christine prevailed before the trial court, the court did not err by awarding her attorney fees. And because Christine prevails on appeal, she is entitled to attorney fees on appeal, subject to her compliance with RAP 18.1(d).

Therefore, we affirm.

_____

WE CONCUR:

_____     _____

---

[27] RCW 26.18.160.