IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| PHILLIP WADE SMITH, | ) | |
| | ) | No. 39342-9-III |
| Appellant, | ) | Consolidated with |
| | ) | No. 39557-0-III |
| v. | ) | |
| | ) | |
| VERA LYNNE SMITH, | ) | UNPUBLISHED OPINION |
| | ) | |
| Respondent. | ) | |

COONEY, J. — In 2018, after 31 years of marriage, Phillip Smith and Vera Lynne Smith[1] separated. Among other accords, they agreed that Phillip would pay Lynne $2,200 per month in spousal maintenance. Their agreement was memorialized in a final order of legal separation. In 2021, Phillip filed a petition for modification of spousal maintenance. The trial court denied his petition. A year later, Phillip filed a second petition for modification of spousal maintenance. Lynne moved to dismiss the petition under CR 12(b)(6) and CR 56. The trial court granted the motion and entered an order that dismissed the petition. Thereafter, Lynne successfully obtained an order of contempt against Phillip. Phillip appeals both orders.

---

[1] For the sake of clarity, the parties are referred to by their first names. No disrespect is intended. Both parties' briefs and portions of the record refer to "Vera" as "Lynne." For consistency we follow suit.

We decline review of the order dismissing the petition and affirm all other aspects of the trial court's orders.

BACKGROUND

Phillip and Lynne were married for 31 years before separating in 2018. Prior to September 10, 2018, when the final order of legal separation (final order) was entered, the parties agreed, among other issues, on the division of their estate and spousal maintenance. In the trial court's findings of fact and conclusions of law that were agreed to by the parties, the court determined that there was a sizeable disparity between the parties' incomes. The court found Phillip's gross monthly income was between $7,300 to $8,400, while Lynne's monthly income was $1,600 from part-time employment. The court found Lynne could earn up to $2,000 per month with full-time employment.[2]

The final order awarded Lynne the parties' home and required her to refinance within one year to release the VA[3] loan back to Phillip. Lynne was also awarded 50 percent of Phillip's military pension, including cost of living adjustments (COLA). Phillip was ordered to provide health insurance coverage for Lynne under two of his policies and, in the event he converted the legal separation into a divorce prior to Lynne becoming eligible for social security benefits, pay Lynne an additional sum sufficient for

---

[2] The findings of fact do not state whether the $1,600 or $2,000 per month is a net or gross income.

[3] United States Veterans Administration.

her to acquire health insurance with "comparable benefits and deductibles." Clerk's Papers (CP) at 172.

The final order required Lynne to submit a DD-2293 form to the Defense Finance Accounting Service (DFAS). Until such time as the DFAS made direct payments to Lynne, Phillip was ordered to pay Lynne "her share of the pension directly via allotment or direct deposit." *Id.* at 173. Should the legal separation be converted into a divorce, Lynne would be required to submit a DD-2656-10 form to the DFAS. Lynne attempted to file the DD-2293 form with the DFAS, but her paperwork was rejected due to a clerical error. Lynne then worked with her attorney and an expert to redraft the order. However, Phillip declined to sign the new order because he "did not have a level of trust with the other side and . . . wanted to make sure there were independent orders." *Id.* at 23.

On April 13, 2021, Phillip filed a petition for modification of spousal maintenance[4] (first petition). On the same date, Phillip filed a financial declaration in support of his petition[5] (first declaration). Ultimately, the trial court dismissed the first petition. In May 2022, Lynne filed a motion for contempt, that alleged Phillip had not paid the entirety of his spousal maintenance obligation nor her share of the military pension. The trial court did not find Phillip in contempt, but cautioned him that a

---

[4] The petition was not designated for our review.

3

judgment would be entered if he failed to pay any overdue maintenance within 30 days.

On June 22, 2022, the legal separation was converted to a dissolution.

PETITION FOR MODIFICATION

In July 2022, Phillip filed a second petition for modification of spousal

maintenance (second petition). Phillip alleged that there had been a substantial change in

circumstances that was hampering his ability to pay maintenance and that Lynne no

longer had the need for maintenance. Lynne responded to the petition and also filed a

motion to dismiss under CR 12(b)(6) and CR 56, arguing that Phillip failed to "allege[ ]

any specific reasons [the spousal maintenance order] cause[d] him severe economic

hardship." CP at 14.

Phillip moved to strike Lynne's motion to dismiss. He also filed a declaration that

alleged a change in circumstances due to increased health insurance payments to Lynne,

the formal division of his military pension, increased rent that totaled $2,495 per month,

an appreciation in equity in the parties' home, and an increase in Lynne's income.

Phillip filed a financial declaration (second declaration) that stated his gross

monthly income was $11,800 and, after deducting $6,068 for taxes, spousal support, and

the division of his pension, his net monthly income was $5,732. Phillip further declared

that he paid $2,495 in monthly rental payments for his new residence, resulting in $6,024

---

[5] Phillip's April 2021 financial declaration was not designated for our review.

in monthly expenses. Additionally, Phillip claimed his minimum monthly credit card payments totaled $1,250.

At a hearing held on September 15, 2022, a superior court commissioner reviewed, among other documents, Phillip's first petition, first declaration, second petition, and second declaration. The commissioner found Phillip's net monthly income had increased from $4,731 in 2021 to $5,732 in 2022 and that his gross monthly income had increased from $8,192 in 2021 to $11,800 in 2022. The commissioner expressed confusion as to why Phillip would move into "a place . . . that's almost $2600 [a month] to rent, and the maintenance amount is $2200." *Id.* at 78. The commissioner concluded that Phillip's increased expenses were not uncontemplated events that would constitute a substantial change in circumstances. By written order, the commissioner denied Phillip's motion to strike and granted Lynne's motion to dismiss the second petition.

Phillip moved to revise the commissioner's order. A superior court judge reviewed the first petition and determined that "even viewing the evidence in the light most favorable to Mr. Smith, the facts that were alleged essentially are the same facts that were previously dismissed a year earlier." *Id.* at 135. The judge engaged in an analysis similar to the commissioner's, noting that a maintenance obligation may only be modified upon a showing of a substantial change in circumstances not contemplated when the decree was entered. The judge found Phillip's new home, increased health

5

insurance premiums, and the division of his military pension were events previously contemplated by the parties and denied the motion to revise. In its order on revision, the judge wrote, "the motion to revise is denied. The court adopts the oral ruling of Comm. Pelc in full." *Id.* at 117.

On November 15, 2022, Phillip filed an appeal of the trial court's order dismissing his second petition.

MOTION FOR CONTEMPT

On November 21, 2022, Lynne filed a motion for contempt, seeking to recover on a $2,900.00 judgment that was entered against Phillip for unpaid spousal maintenance from May 2022, and for $4,300.00 in unpaid spousal maintenance for the months of July to October 2022. Lynne also alleged arrears totaling $3,469.01 for unpaid COLA increases from Phillip's pension dating back to 2018.

Phillip argued that he needed access to Lynne's financial information to properly respond to her contempt motion. Phillip asserted it was Lynne's "duty to establish evidence that payments have not been made." *Id.* at 212. In regard to the COLA payments, Phillip argued that Lynne needed to provide proof she had filed a DD-2293 or DD-2656-10 form with the DFAS. Phillip also alleged that, based on his increased expenses, he could no longer afford to pay maintenance.

In reply, Lynne provided documentation showing electronic monetary transfers Phillip had made between August to October 2022. Lynne also asserted that Phillip knew she had attempted to submit the proper forms with the DFAS, but could not due to the initial order's language.

A court commissioner found Phillip had the ability to comply with the maintenance order, but chose not to. The commissioner found that, "Mr. Smith has made every effort to not follow the final orders. He has filed numerous times, and has paid attorney fee retainers amounting to the same amount owed." *Id.* at 286. The commissioner found that "Mr. Smith has acted in bad faith when refusing to pay spousal maintenance" and that his failure to pay the COLA increases was intentional. *Id.* at 286-87. The commissioner claimed that, "[t]his is one of the worst showings of bad faith the court has seen in a while." *Id.* at 286, 303.

In finding Phillip in contempt, the commissioner incorporated her oral ruling into the final order. In her oral ruling, the commissioner found that Phillip's actions were intentional and constituted bad faith because:

> He has now paid retainers to two separate attorneys and that's just the retainer, we're not talking about the money paid subsequent to retainers in the amount of $7000. He currently owes under this more recent contempt order $7769. Rather than paying what the court ordered, he's choosing to pay that for attorneys, that's fine. That's your right. But when you're saying you have no money to pay, but yet you're able to spend that same amount of money on attorneys it proves to me bad faith.

7

*Id.* at 304.

The contempt order required Phillip to pay $4,300.00 in past due spousal maintenance, $3,469.01 in past due COLAs, and directed him to sign the military pension division order so Lynne could begin having payments directly deposited into her account. Finally, the commissioner awarded Lynne reasonable attorney fees. As to Phillip's assertation that he was entitled to Lynne's financial records, the commissioner rejected his argument.

A superior court judge later denied Phillip's motion to revise the commissioner's order on contempt.

On March 2, 2023, Phillip filed an appeal of the trial court's order of contempt. Phillip's appeal of the contempt order was consolidated with his appeal of the order dismissing his second petition.

## ANALYSIS

On appeal, Phillip contends Lynne's motion to dismiss was procedurally defective and that the trial court erred in dismissing his second petition and in finding him in contempt.

### WHETHER LYNNE'S MOTION TO DISMISS WAS PROCEDURALLY DEFECTIVE

Phillip contends Lynne's motion to dismiss his second petition was defective because it failed to comply with the applicable Local Rules for the Superior Court of

Spokane County (LCR). Specifically, Phillip asserts that Lynne failed to file a memorandum and documentary evidence supporting her motion as required by LCR 40(b)(9)(B). He further contends that Local Special Proceeding Rule (LSPR) 94.04(*l*)(2) required Lynne to file a financial declaration before being awarded attorney fees. We disagree with both arguments.

> LCR 40(b)(9)(B) reads:
>
> The moving party shall file a motion, all supporting affidavits or declarations and documentary evidence, and a brief or memorandum of authorities, unless the legal position is fully and adequately covered by the "authorities" section of the issue of law form. These documents shall be filed and served no later than twelve (12) days prior to the hearing.

Phillip urges us to interpret this rule as requiring the moving party to file a memorandum along with documentary evidence. We decline to adopt such a strict interpretation. First, LCR 40(b)(9)(B) concludes by stating "unless the legal position is fully and adequately covered by the 'authorities' section." This implies a memorandum may not always be necessary. Moreover, when deciding a CR 12(b)(6) motion, generally, a trial court may consider only the factual allegations contained in the pleadings, thereby alleviating the necessity for documentary evidence. *LaRose v. King County*, 8 Wn. App. 2d 90, 103, 437 P.3d 701 (2019). Further, if LCR 40(b)(9)(B) mandated the filing of a memorandum and documentary evidence, it would preempt the provisions of CR 12(b)(6).

Secondly, while LCR 40(b)(9)(B) generally governs the filing and scheduling of motions, LCR 40(b)(8) is specific to dispositive motions. LCR 40(b)(8) provides, "Motions for summary judgment, partial summary judgment, or dismissal are governed by LCR 56." LCR 56 lacks any requirement that a party file a memorandum or documentary evidence when moving for summary judgment, partial summary judgment or dismissal under CR 12. Rather, LCR 56 merely requires the filing of a motion.

Lynne's motion to dismiss the second petition was not procedurally defective.

Alternatively, Phillip argues that because Lynne failed to file a financial declaration, as required by LSPR 94.04(*l*)(2), the trial court should have denied her motion to dismiss. Under LSPR 94.04(*l*)(2), both parties are required to file financial declarations when one of the parties brings a motion for financial relief. Lynne concedes she did not file a financial declaration in conjunction with her motion to dismiss.

Although Lynne made a request for attorney fees in her response to Phillip's second petition, she did not seek financial relief in her motion to dismiss. The final order already granted Lynne financial relief. Her motion to dismiss the second petition was merely an attempt to maintain the status quo. Because Lynne did not seek financial relief, and the court did not order any financial relief when it granted her motion to dismiss, the provisions of LSPR 94.04(*l*)(3), requiring the court to "deny the request, continue or strike the hearing, and/or impose sanctions," is inapplicable.

Lynne's motion to dismiss the second petition did not offend the local court rules for the Superior Court of Spokane County.

WHETHER THE TRIAL COURT ERRED IN DISMISSING PHILLIP'S SECOND PETITION

Phillip contends that the record was sufficient to survive either a motion under CR 12(b)(6) or CR 56. Phillip further asserts the court erred in dismissing the second petition because Lynne failed to submit any supporting documentation, thus not meeting her burden. For the reasons stated below, we decline review.

As an initial matter, we must decide whether to review the judge's order denying revision or the court commissioner's order of dismissal. Generally, we review a superior court judge's ruling on revision, not the commissioner's initial decision. *In re Marriage of Lyle*, 199 Wn. App. 629, 633, 398 P.3d 1225 (2017). However, "[u]nder RCW 2.24.050, the findings and orders of a court commissioner not successfully revised become the orders and findings of the superior court." *Maldonado v. Maldonado*, 197 Wn. App. 779, 789, 391 P.3d 546 (2017).

Here, not only did the superior court judge deny Phillip's motion to revise the commissioner's order, she expressly adopted the commissioner's decision. The judge's order states, "the motion to revise is denied. The court adopts the oral ruling of Comm. Pelc in full." CP at 117. Consequently, the commissioner's order became that of the superior court judge.

11

Next, we must decide whether to review the trial court's application of CR 12(b)(6) or CR 56. Lynne brought a motion to dismiss Phillip's second petition under CR 12(b)(6) and CR 56. In deciding Lynne's motion, neither the commissioner nor the judge articulated whether the motion was being granted under CR 12(b)(6) or CR 56.

A motion to dismiss under CR 12(b)(6) should be granted only if it appears beyond doubt that the petitioner cannot prove any set of facts, consistent with the petition, to justify relief. *Hipple v. McFadden*, 161 Wn. App. 550, 556, 255 P.3d 730 (2011). When deciding a CR 12(b)(6) motion, the trial court must not consider matters outside of the pleadings. *Brown v. MacPherson's, Inc.*, 86 Wn.2d 293, 297, 545 P.2d 13 (1975). If a trial court considers evidence and matters outside of the pleadings, the CR 12(b)(6) motion converts to a CR 56(c) motion. CR 12(c); *State v. LG Elecs., Inc.*, 185 Wn. App. 394, 404, 341 P.3d 346 (2015).

Here, the commissioner considered evidence outside of Phillip's initial pleading. Among other documents, the commissioner examined Phillip's first petition and his first declaration. Because the commissioner considered evidence and matters outside of the pleadings, the commissioner ineluctably decided the motion as a summary judgment motion under CR 56.

12

We review a motion for summary judgment de novo. *Keck v. Collins*, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). In deciding a summary judgment motion, the court must consider the evidence and all reasonable inferences in the light most favorable to the nonmoving party. *Id*. (citing *Folsom v. Burger King*, 135 Wn.2d 658, 663, 958 P.2d 301 (1998)). Summary judgment is appropriate only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id*. In reviewing an order on summary judgment, we engage in the same inquiry as the trial court and examine all the evidence presented to the trial court. *Highline Sch. Dist. No. 401 v. Port of Seattle*, 87 Wn.2d 6, 15, 548 P.2d 1085 (1976); *Folsom*, 135 Wn.2d at 663.

On appeal, the appellant bears the responsibility of providing the reviewing court with the precise record considered by the trial court. *Tacoma S. Hosp., LLC v. Nat'l Gen. Ins. Co.*, 19 Wn. App. 2d 210, 220, 494 P.3d 450 (2021). If an appellate court is hindered from independently examining all of the evidence presented to the trial court, it cannot properly accomplish its charge. *Folsom*, 135 Wn.2d at 663. Therefore, appellate review of a summary judgment order requires the precise record considered by the trial court. *LeBeuf v. Atkins*, 93 Wn.2d 34, 36, 604 P.2d 1287 (1980). Accordingly, we will generally not review an alleged error if the relevant part of the record necessary for our review is not provided. *See State v. Mannhalt*, 33 Wn. App. 696, 704, 658 P.2d 15 (1983).

In granting Lynne's motion for summary judgment, the trial court relied heavily on Phillip's first petition and first declaration. The trial court employed a side-by-side comparison of the documents from his first petition and second petition. In doing so, the trial court concluded the record failed to show that a genuine issue of material fact existed as to whether there had been a substantial change in circumstances sufficient to support the second petition.

Because Phillip failed to provide the precise record, namely the documents related to his first petition for modification,[6] we lack the ability to independently examine all of the evidence presented to the trial court. Therefore, we decline review of the alleged error.

WHETHER THE TRIAL COURT ERRED WHEN IT FOUND PHILLIP IN CONTEMPT

Phillip argues the trial court erred when it found him in contempt because he was unable to comply with the final order that required him to pay maintenance. We disagree.

We review a trial court's decision to enter a contempt order for abuse of discretion. *In re Marriage of Myers*, 123 Wn. App. 889, 892, 99 P.3d 398 (2004). "A trial court abuses its discretion by exercising it on untenable grounds or for untenable

---

[6] Phillip designated Lynne's first financial declaration.

14

reasons." *Id*. at 892-93 (citing *In re Marriage of James*, 79 Wn. App. 436, 440, 903 P.2d 470 (1995)).

When a trial court enters a contempt order it must make findings of fact that support its judgment. *Marriage of James*, 79 Wn. App. at 440. "We review the trial court's factual findings for substantial evidence and then determine whether the findings support the conclusions of law." *Marriage of Myers*, 123 Wn. App. at 893. "Substantial evidence" is evidence contained in the record that would convince a "fair-minded, rational person of the truth of the declared premise." *In re Marriage of Fahey*, 164 Wn. App. 42, 55, 262 P.3d 128 (2011).

In part, contempt is an intentional disobedience of any lawful judgment, decree, or order. RCW 7.21.010(1)(b). The law presumes that one is capable of complying with an order of the court. *In re Pers. Restraint of King*, 110 Wn.2d 793, 804, 756 P.2d 1303 (1988). Therefore, a demonstrated inability to comply is an affirmative defense. *Id*.

Here, the trial court found Phillip in contempt due to his intentional and willful failure to make maintenance payments as required by the final order. The court found, and the record supports, the existence of a valid court order that required Phillip pay Lynne $2,200 per month in maintenance and COLAs. Phillip admittedly failed to comply with the terms of the order. Rather than produce evidence of compliance, Phillip

15

insisted that Lynne disclose financial records to support her allegation that he was in arrears.

Contrary to Phillip's argument that he lacked the ability to comply with the final order, substantial evidence supports the trial court's finding that he had the ability to comply and his disobedience was intentional, willful, and done in bad faith. Between entry of the order and when Phillip filed the second petition, his income had increased, not decreased as he claimed. Moreover, rather than attempting to pay maintenance, Phillip put substantial resources toward being relieved of his support obligation. The court found that rather than paying his maintenance obligation totaling $7,769, Phillip opted to pay $7,000[7] for two separate attorneys to file motions for discovery and to "do anything but pay [the spousal obligation]." CP at 304. As reflected in his $2,495 monthly rental obligation, rather than conserve assets, Phillip increased his expenditures to the detriment of his maintenance obligations.

As to Phillip's argument that the trial court lacked authority to divide the military pension or require him to pay the COLAs, the order on contempt does not run afoul of the final order. The final order required Lynne to submit a DD-2293 form to the DFAS. Until the DFAS directed payments to Lynne, Phillip was required to pay Lynne "her share of the pension directly via allotment or direct deposit." CP at 173. Due to a

---

[7] The record shows Phillip paid his attorney a retainer of $4,000.

clerical error, the DFAS rejected Lynne's submissions. Thereafter, Phillip declined to sign the redrafted orders. The contempt order did not divide assets; rather, it enforced the final order.

Next, Phillip asserts because Lynne sought financial relief, LSPR 94.04(*l*)(2) required that she file a financial declaration. Because Lynne failed to file a financial declaration, Phillip argues the court erred in awarding her attorney fees.

RCW 26.18.160 provides that "[i]n any action to enforce a support or maintenance order under this chapter, the prevailing party is entitled to a recovery of costs, including an award for reasonable attorney fees." LSPR 94.04(b)(1) reads, "These rules apply to matters filed under RCW . . . 26.18." LSPR 94.04(*l*)(2) requires a party to file a financial declaration when requesting financial relief. Under LSPR 94.04(*l*)(3), a "[f]ailure to file financial documents for the motion hearing is a basis for the court to deny the request, continue or strike the hearing, and/or impose sanctions." The rule does not mandate the court deny the request, continue or strike the hearing, or impose sanctions; it grants the trial court discretion.

The trial court did not abuse its discretion in granting Lynne's request for attorney fees.

17

ATTORNEY FEES ON APPEAL

Both parties requested attorney fees on appeal. Phillip contends he has established arguable merit in showing that there were uncontemplated substantial changes that justified modifying his spousal maintenance obligation and that Lynne consistently failed to follow procedural requirements below. Phillip also argues that he has a legitimate need to have Lynne pay his attorney fees.

Lynne contends Phillip has not demonstrated any merit to his claims. Lynne further argues that Phillip has not shown a need, citing to his continued funding of litigation with the attempt of alleviating his maintenance obligation.

Under RAP 18.1(a) attorney fees may be granted on appeal provided the applicable law grants a party the right to recover attorney fees before the Court of Appeals. Under RCW 26.09.140, "[T]he appellate court may, in its discretion, order a party to pay for the cost to the other party of maintaining the appeal and attorneys' fees in addition to statutory costs." In considering an award of attorney fees under this statute, we "must consider the parties' relative need and ability to pay." *In re Marriage of Shellenberger*, 80 Wn. App. 71, 87, 906 P.2d 968 (1995). We also consider "the arguable merit of issues raised on appeal." *In re Marriage of Leslie and Verhey*, 90 Wn. App. 796, 807, 954 P.2d 330 (1998).

No. 39342-9-III; No. 39557-0-III
*Smith v. Smith*

Here, Phillip's appeal lacks merit. Based on Phillip's failure to properly designate the record, we were unable to review his alleged error related to the dismissal of his second petition. As far as our review of the contempt order is concerned, Phillip willfully opted to direct his resources toward litigation rather than paying his maintenance obligation and has otherwise failed to conserve his resources. Indeed, the record before us lacks any showing of a substantial change in circumstances that were not contemplated when the final order was entered.

Based on the appeal being deficient in merit, Lynne's financial need, and Phillip's ability to pay, we grant Lynne's request for attorney fees.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Cooney, J.

WE CONCUR:

_____
Lawrence-Berrey, C.J.

_____
Pennell, J.

19